[No. 33528. *En Banc.* May 24, 1956.

ROY DeGRIEF, *Appellant,* v. THE CITY OF SEATTLE *et al.,*
*Respondents.*[2]

[2]Reported in 297 P. (2d) 940.

*McMicken, Rupp & Schweppe,* for appellant.

*A. C. Van Soelen* and *Arthur Schramm,* for respondents.

DONWORTH, J.—This case involves the constitutionality and, in the alternative, the proper interpretation of chapter 290, Laws of 1955, p. 1287, which is entitled:

"An Act creating and establishing municipal courts in cities of the first class having more than five hundred thousand inhabitants, defining and prescribing their jurisdiction, regulating their practice and procedure; providing judges and personnel thereof; and fixing salaries."

The action was instituted by one of the police judges of the city of Seattle (who is herein referred to as appellant) against the city, its mayor, and members of its city council (referred to as respondents) to enjoin the enforcement of the statute and of ordinance No. 84122 of the city of Seattle, which was enacted to implement the statute and became effective on the same day. The prayer of the complaint was for both injunctive relief against their enforcement and for a judicial declaration that the statute and the ordinance are both unconstitutional and void in certain particulars and in their entirety.

The trial court entered a temporary injunction (which is still in effect) enjoining the enforcement of the statute and the ordinance during the pendency of this litigation. Thereafter, respondents' demurrer to the complaint, on the ground that it failed to state facts sufficient to entitle appellant to the relief prayed for, was argued and sustained in part and overruled in part. Since appellant stood on his complaint and respondents declined to plead further, the court entered a final judgment enjoining the operation of that portion of ordinance No. 84122 fixing the salary of a judge of the municipal court at eight thousand dollars for the year 1955, but denied a permanent injunction against the enforcement of chapter 290, Laws of 1955. From this latter portion of the judgment, this appeal has been prosecuted.

The principal allegations of appellant's complaint may be summarized as follows:

Appellant is a resident and taxpayer of the city of Seattle, and on November 2, 1954, was a duly elected justice of the peace of that city for a term expiring January 1, 1959. On January 10, 1955, he was appointed by the mayor as police justice. (Chapter 84, Laws of 1941, p. 206, which authorizes such appointment, provides that such police justice or police judge shall be designated as municipal judge of the city.)

The city of Seattle is a city of the first class, having a population of 467,591 inhabitants, as shown by the last Federal census (made in 1950), and there has been no state census made subsequent to 1950, pursuant to Art. II, § 3 of the state constitution.

Appellant is receiving a salary as justice of the peace of $6,500 per year, plus an additional salary from the city as police judge of $1,500 per year. He has the right to practice law when not otherwise engaged in the performance of his judicial duty, and this right is extremely valuable to him, having for some years past resulted in an income of between $5,000 and $6,000 per year.

Chapter 290, Laws of 1955 (herein referred to as the act), was enacted pursuant to Art. IV, § 1 of the state constitution, and "takes effect June 9, 1955." (The complaint was filed June 3, 1955, and, as now appears by supplemental transcript, was served on the attorney general June 7, 1955.)

The act purports to create a new municipal court in cities with more than five hundred thousand population, and to displace the presently incumbent police justices prior to the end of the term for which they were elected. It also imposes new and higher financial obligations on such cities in the middle of the budget year, which could not be anticipated by them, all as more particularly shown by the letter of May 2, 1955, written by the corporation counsel to the city council, a copy of which is attached to the complaint.

On May 23, 1955, the city council passed ordinance No. 84122 for the purpose of making the act effective in the city of Seattle.

Since, in addition to attacking the constitutionality of the act, appellant is contending that the act is not presently applicable to the city of Seattle, paragraph VIII of the complaint is set forth in full:

"That said Chapter 290 of the Laws of 1955 does not apply to the City of Seattle, in that said City of Seattle does not have, as required by Section 1 of said Chapter 290, a population of more than 500,000 'as shown by the federal or state census, whichever is the later;' that by the last federal census, viz., of 1950, the population of Seattle was 467,591, and that there has not been since 1950, nor for many years past, a state census, viz., an actual enumeration of the inhabitants of the state, as contemplated by Article II, section 3 of the Constitution of the State of Washington; that under the provisions of Chapter 5, Laws of 1947, and Chapter 96, Laws of 1951, (R.C.W. 43.62.010 et seq.) a state census board is created which does not enumerate but estimates the population of cities and towns for the purpose of allocating to cities and towns certain state funds, particularly motor vehicle excise funds; that according to the last certificate filed by the so-called state census board with the Secretary of State in 1954, the estimated population of the City of Seattle as of April 1, 1954 was 548,000; but that such so-called census is an estimate merely of the populations of cities and towns within the state and is not a 'state census', within the meaning of the State Constitution, or within the intent of the legislature."

The remainder of the complaint alleges five grounds on which the act is said to be invalid. These need be considered only in the event that we should come to the conclusion that the act is presently operative as to the city of Seattle.

Having stated in substance all the material allegations of the complaint, we turn to the consideration of appellant's first assignment of error, to wit, that the trial court erred in holding that chapter 290, Laws of 1955, is by its terms presently applicable to the city of Seattle. (If so, the act became operative therein on June 9, 1955.)

In order to pass upon this question, we must have in mind the language of several sections of the act, particularly § 1, which reads:

"There is hereby created and established in each incorporated city of this state having a population of more than five hundred thousand inhabitants, *as shown by the federal or state census, which ever is the later,* a municipal court, which shall be styled 'The Municipal Court of ............................ (name of city),' hereinafter designated and referred to as the municipal court, which court shall have jurisdiction and shall exercise all the powers by this act declared to be vested in such municipal court, together with such powers and jurisdiction as is generally conferred in this state either by common law or statute." (Italics ours.)

In contrast to the italicized language in § 1, we find in § 10 of the act, relating to the creation of additional departments of the municipal court, the following provision:

"There shall be two departments of the municipal court, provided that the legislative body of the city shall create one additional department for each additional one hundred fifty thousand inhabitants over five hundred thousand, *as determined by the most recent federal or state census. The latter shall be as provided by Chapter 96, section 2, Laws of 1951* (RCW 43.62.030). Each department shall be presided over by a municipal judge who shall be elected as hereinafter provided. The departments shall be established in such places as may be provided by the legislative body of the city. . . ." (Italics ours.)

The reference to chapter 96, Laws of 1951, p. 241 (RCW 43.62.030), in § 10 of the act, and the omission of any reference thereto in § 1 thereof, make it very difficult to interpret the intention of the legislature as to when chapter 290, Laws of 1955, was to become operative.

By chapter 96, Laws of 1951, the legislature created a state census board whose duty it is to "determine," as of April 1st of each year, the population of each city and town in the state. Its report is required to be filed with the secretary of state on June 1st, and after January 1st of the following year the report shall be used as the basis for the allocation of state funds to cities and towns during that year. In § 3, the legislature provided:

"The tax commission or any other state officer or officials of cities and towns shall upon request of the board furnish such information, aid, and assistance as may be required by

the board in the performance of its duties. The action of the board in determining the population shall be final and conclusive."

There is nothing in this statute other than the above quoted section to indicate what method the board shall adopt in determining the population of the cities and towns. The complaint, in effect, alleges that the 1954 report of the state census board contains merely an estimate of the population of Seattle which is not based on an actual enumeration of its inhabitants and is not a state census within the meaning of the constitutional provision (Art. II, § 3) or the intent of the legislature in enacting chapter 290, Laws of 1955. These are legal conclusions of the pleader which are not admitted by the demurrer.

We, therefore, find the same words "state census" in both § 1 and § 10 of the act, but it is only in the latter section that these two words are specifically made to refer to the report of the state census board created by chapter 96, Laws of 1951. Thus, for the purpose of determining when an additional judgeship is to be created in the municipal court, the population of the city as shown by the report of the state census board is conclusive.

The provisions of § 27 of the act should also be considered in connection with the interpretation of § 1. This section provides:

"The provisions of sections 35.22.420, 35.22.430, 35.22.440, 35.22.450, 35.22.460, 35.22.480, 35.22.490, 35.22.510, 35.22.520, 35.22.530, 35.22.540, 35.22.550, and 35.22.560, RCW, insofar as inconsistent with the provisions of this act shall apply only to cities of the first class having a population of less than five hundred thousand inhabitants."

It is to be noted that the legislature, in continuing the existing police court laws in force in cities of the first class having *less* than five hundred thousand population, made no reference to the method or manner of determining the number of inhabitants. Presumably, this was not necessary because § 27 applies to all cities of the first class except those having *more* than five hundred thousand population as shown by the most recent Federal or state census.

Of the three sections which refer to the requisite more than five hundred thousand population, which is necessary to the establishing of a municipal court, we find that:

Section 1 does not define the words "state census";

Section 10 defines them as meaning the annual report of the state census board;

Section 27 makes no mention of "state census."

Our problem is to find the answer to the question:

Did the legislature, by the omission of any reference to chapter 96, Laws of 1951, in § 1 of the act, intend that the act should not apply to any city in the state until either (1) the Federal census or (2) a state census made pursuant to Art. II, § 3, of the constitution shall show that such city has a population of more than five hundred thousand inhabitants?

Appellant's argument on this phase of the case is based on the premise that the words "state census" in § 1 of this act must be interpreted as meaning the census referred to in Art. II, § 3, of the state constitution, which provides as follows:

"The legislature shall provide by law for an enumeration of the inhabitants of the state *in the year one thousand eight hundred and ninety-five and every ten years thereafter*; and at the first session after such enumeration, and also after each enumeration made by the authority of the United States, the legislature shall apportion and district anew the members of the senate and house of representatives, according to the number of inhabitants, excluding Indians not taxed, soldiers, sailors and officers of the United States army and navy in active service." (Italics ours.)

Since the legislature has never caused such a census to be made, and since the 1955 session was within six days of adjourning *sine die* when chapter 290, Laws of 1955, was enacted without any attempt having been made by the legislature to comply with the constitutional provision requiring a 1955 state census, it does not seem reasonable to infer that the legislature, by using the words "state census" in § 1 of the act, intended that the effective creation of the municipal court should depend upon a nonexistent consti-

tutional census for which the legislature has consistently refused to make any provision. Nowhere in the act is there any reference to Art. II, § 3, of the constitution. That constitutional provision is not involved in this case, although appellant has referred to it in his complaint and in his briefs.

Since the legislature has failed to comply with the constitutional mandate seven specific times (in 1895, 1905, 1915, 1925, 1935, 1945, and 1955), we cannot reasonably hold that the operation of this act was to be suspended either (a) until the next Federal census in 1960 or (b) until the legislature shall order a constitutional state census in 1965.

■ The legal presumption is that, unless a contrary intent is specifically indicated in the particular legislative enactment, all bills (other than emergency and appropriation measures) shall become effective at the time designated in the constitution. That time is ninety days after the adjournment of the legislature (in this case June 9, 1955). *Longview Co. v. Lynn,* 6 Wn. (2d) 507, 108 P. (2d) 365.

When the act was passed in March, 1955, the legislature knew that:

1. Seattle was the only city in the state which could possibly be affected by the act, and that the latest Federal census (1950) showed Seattle's population as being less than 500,000.

2. There had been no constitutional state census since the 1950 Federal census (or at any other time), and the only state census showing the population of Seattle was the determination of the state census board as shown by its report on file with the secretary of state (made as of April 1, 1954) that Seattle had a population of 548,000.

Can we say that, under these circumstances, the legislature intended that the act should remain dormant for five or ten years? We do not feel warranted in so holding when there is nothing in the act indicative of a legislative intent that it should not become effective and operative at the usual time (June 9, 1955). On the contrary, the legislature, in § 15 and § 24, provided for the election of municipal judges in November, 1958, for a four year term, and for the designa-

tion of temporary judges to serve until the election and qualification of permanent judges. These provisions are strongly pursuasive that no delay in the operation of the act was contemplated by the legislature.

Appellant cites definitions of the word "census" as meaning an official enumeration of the population made from an actual count of the inhabitants of a given area. No doubt, this is the ordinary meaning of the term, but in this state the legislature had, in 1951, created a "state census board," directed it to "determine the population of all cities and towns of the state" each year, and declared its determination of population to be "final and conclusive."

There is nothing in chapter 96, Laws of 1951, which instructs the board as to the precise method to be followed in determining such population. We cannot take judicial notice of the board's procedure in arriving at its determination. Neither are we bound by the allegations of paragraph VIII of the complaint that the report of the state census board contains merely an estimate of Seattle's population.

The only clue to its procedure is found in § 3 of chapter 96, Laws of 1951 (RCW 43.62.040), quoted above, in which the legislature directed certain state and municipal officers to assist the board upon its request in the performance of its duties. The last sentence of § 3 declares that the board's determination is final and conclusive.

The words "state census" in § 1 of chapter 290, Laws of 1955, can, in view of the presumption that the act was intended to take effect on June 9, 1955, be reasonably held to refer to the 1954 report of the state census board created by the legislature in 1951, rather than to a nonexistent constitutional state census supposedly for redistricting the state as provided in Art. II, § 3. This interpretation is consistent with the presumed legislative intent that the act should become effective and operative at the usual time, to wit, ninety days after adjournment.

■ "It is a rule of statutory construction almost universal that it is the duty of the courts to give such construction to the language of a statute as will make it purposeful

and effective, rather than futile and meaningless." *Denning v. Quist,* 172 Wash. 83, 19 P. (2d) 656.

"It is too well-established to need citation of authority that a court may not place a narrow, literal, and technical construction upon a part only of a statute and ignore other relevant parts. In the process of construction, the intention of the lawmakers must be extracted from a consideration of all of the provisions of the act." *In re Cress,* 13 Wn. (2d) 7, 123 P. (2d) 767.

In construing a statute, the legislative intent must be gleaned from a consideration of the whole act by giving effect to the entire statute and every part thereof. *State v. Houck,* 32 Wn. (2d) 681, 203 P. (2d) 693, and cases cited.

"It is our duty to construe two statutes dealing with the same subject so that the integrity of both will be maintained. *Buell v. McGee,* 9 Wn. (2d) 84, 90, 113 P. (2d) 522 (1941). The same rule applies to the construction of parts of one act. Each part must be construed in connection with every other part or section. 2 Sutherland, Statutory Construction (3d ed.), 336, § 4703." *Tacoma v. Cavanaugh,* 45 Wn. (2d) 500, 275 P. (2d) 933.

"It is a familiar canon of construction, that when similar words are used in different parts of a statute, the meaning is presumed to be the same throughout." *Booma v. Bigelow-Sanford Carpet Co.,* 330 Mass. 79, 111 N. E. (2d) 742, and cases cited.

Applying these rules to the present case, we presume, in the absence of legislative statement to the contrary, that the legislature used the term "state census" in the same sense in § 1 as in § 10 of the act. Since "state census" is defined in § 10 of the act, as hereinbefore stated, we must hold that the definition therein provided by the legislature applies equally to § 1. Only by so interpreting these two sections can the act be purposeful and not meaningless.

If the legislature had intended the act to be effective June 9, 1955, but *not* to be operative as to any city in the state until 1960 or 1965, it would hardly have provided for the appointment of temporary judges of the municipal court to perform the functions of the newly created offices until their successors were elected at the general election in November, 1958.

■ Appellant argues that the rule *expressio unius est exclusio alterius*—the expression of one thing excludes others not expressed—prevents the court from holding that the term "state census" as used in § 10 of the act is applicable to either § 1 or § 27. However, this court has held, in *State ex rel. Becker v. Wiley*, 16 Wn. (2d) 340, 133 P. (2d) 507, that this rule should be applied only as a means of discovering the legislative intent. In that case, we stated:

"Since these statutes contain no express prohibition, it seems to us it is possible to argue that they are prohibitory only under the rule of express mention and implied exclusion. This rule should be applied only if and when it aids in determining legislative intent. We quote from Crawford, Statutory Construction, p. 336, § 195:

" 'In other words, the principle is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature.' "

In his reply brief, appellant reviews three of our prior decisions which are said to uphold his contention as to the meaning of the words "state census." They are: *Rohde v. Seavey*, 4 Wash. 91, 29 Pac. 768; *State ex rel. Williams v. Brooks*, 58 Wash. 648, 109 Pac. 211; *State ex rel. Elwood v. Lovering*, 78 Wash. 624, 139 Pac. 617.

In none of the three cited cases was there an official determination of population by a body authorized by the legislature to make a determination of population for the respective purposes involved therein. Here, the state census board has been created by the legislature and empowered and directed to determine the population of cities and towns, and its determination thereof is made final and conclusive.

■ Applying the rules of statutory construction hereinbefore cited to the statute involved in this case, it is our conclusion that the legislature intended that the municipal court provided for therein should come into existence and begin functioning in the city of Seattle on June 9, 1955. Therefore, the trial court did not err in holding that chapter 290 of the Laws of 1955 is by its terms presently applicable to the city of Seattle.

Appellant does not allege that he intends to qualify or not to qualify as a municipal judge under the act. His allegation is that the act

". . . purports in Section 24 to require the plaintiff as a justice of the peace, who is a duly appointed and acting police justice of the City, *against his will*, to become a judge of the Municipal Court created by said Chapter 290, . . ." (Italics ours.)

Appellant's allegation is not admitted by the demurrer, nor is this court bound thereby, because it is not sustained by the plain and unambiguous language of the act, which gives him the first option to qualify as a municipal judge. There is no compulsion whatever.

In considering the five grounds upon which appellant contends that the act is unconstitutional, we encounter this question: May appellant maintain this declaratory judgment action, relating to the constitutionality of the act, under the circumstances above stated?

This court stated in *DeCano v. State,* 7 Wn. (2d) 613, 110 P. (2d) 627, that:

"One may not, by such action, challenge the constitutionality of a statute unless it appears that he will be directly damaged in person or in property by its enforcement. *Acme Finance Co. v. Huse,* 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345. The action must also be adversary in character and involve a present and actual, as distinguished from a possible or potential, controversy between the parties. *Washington Beauty College v. Huse,* 195 Wash. 160, 80 P. (2d) 403; *State v. Fruitland Irr. Dist.,* 196 Wash. 11, 81 P. (2d) 844; and *Adams v. Walla Walla,* 196 Wash. 268, 82 P. (2d) 584."

As stated above, under § 24 of the act, appellant has the first opportunity to qualify as a municipal judge. In the absence of an allegation that he intends to avail himself of the privilege, he has failed to show that the enforcement of the act operates as an infringement of any of his constitutional rights.

If appellant, as the incumbent justice of the peace acting as police judge, elects to qualify as a municipal judge under the act, he thereby relinquishes his right to the office of justice of the peace and waives the alleged rights which

he claims exist in relation to that office. If appellant fails to qualify as a municipal judge, he retains his elective office as justice of the peace and has no standing to complain as to the validity of any of the provisions of the act creating the municipal court.

Considering all the allegations of paragraph IX of the complaint, relating to the alleged unconstitutionality of the act, we conclude that appellant has failed to show that there exists a justiciable controversy as between the parties upon those issues.

 The following language, in *Kitsap County v. Bremerton,* 46 Wn. (2d) 362, 281 P. (2d) 841, is applicable here. We there said:

"To decide these questions on the record before us would result in rendering a purely advisory opinion, which we will not do in a declaratory judgment action. *Seattle-First Nat. Bank v. Crosby,* 42 Wn. (2d) 234, 254 P. (2d) 732."

The judgment of the trial court denying appellant an injunction against the enforcement of the provisions of chapter 290, Laws of 1955, is affirmed. The portion of the judgment enjoining the enforcement of a certain portion of ordinance No. 84122 of the city of Seattle is vacated because it pertains only to the year 1955, and, therefore, the matter has become moot. The temporary injunction which was granted *pendente lite* and continued in effect during the pendency of this appeal is dissolved.

It is so ordered.

ALL CONCUR.

---

April 17, 1957. Petition for rehearing denied.