[No. 706-2.    Division Two.    August 9, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. YARD BIRDS,
INCORPORATED, *Appellant*.

*H. John Hall* and *Lee J. Campbell* (of *Campbell & Hall*),
for appellant.

*Slade Gorton, Attorney General,* and *Randolph W. Urms-
ton, Assistant,* for respondent.

PEARSON, C.J.—The state commenced this action on June
10, 1970 to abate a public nuisance and to obtain a manda-
tory injunction directing defendant, Yard Birds, Inc., to

remove certain advertising signs next to Interstate Highway 5 in Thurston and Lewis Counties, Washington. When filed, this action was governed by the Highway Advertising Control Act of 1961, as amended in 1963 (RCW 47.42), and the Highway Commission's regulations promulgated thereunder, WAC 252-40. Prior to the filing of this action, these legislative and administrative provisions had been sustained as a valid exercise of the state's police power in *Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968).

The state's petition alleged that defendant "maintained" five signs in violation of the 1961 act. "Maintain" was defined in RCW 47.42.020(4) as meaning "to allow to exist." One of the five signs was located in Thurston County and was alleged to be within a "protected area," which was defined in RCW 47.42.020(6) as "all land adjoining or adjacent to the interstate system and within six hundred sixty feet of the edge of the right of way." Since the sign was alleged to be more than 12 miles from the activity advertised, it did not qualify as a permissible, Type 3, sign. *See* Laws of 1961, ch. 96, § 4, formerly RCW 47.42.040(3);[1] and WAC 252-40-040(3)[2] (superseded by WAC 252-40-040(4)).

---

[1] RCW 47.42.040 and .040(3) provided: "It is declared to be the policy of the state that only the following four types of signs shall be erected or maintained in a protected area:

". . .

"(3) Signs, not inconsistent with the policy of this chapter and the national policy set forth in section 131 of title 23, United States Code and the national standards promulgated thereunder by the secretary of commerce, advertising activities being conducted at a location within twelve miles of the point at which such signs are located."

[2] WAC 252-40-040 and -040(3) provided: "Only the following signs may be erected or maintained in protected areas:

". . .

"(3) . . . Signs not prohibited by state law which are consistent with the applicable provisions of these regulations and which advertise activities conducted within twelve air miles of such signs. Not more than one sign, advertising activities being conducted upon real property where the sign is located, visible to traffic proceeding in any one direction on any one interstate highway, may be permitted more than fifty feet from the advertised activities."

Moreover, the state alleged that this sign was nonpermissible not only because maintained in a protected area more than 12 miles from the activity advertised, but also because the size of the sign exceeded the maximum 150 square feet area permitted by the Highway Commission's regulations. WAC 252-40-020(11) (1961)[3] (superseded by WAC 252-40-020(11) (1972)).

The remaining four signs were located in Lewis County and, from their wording, apparently were within 12 miles of defendant's business. The state alleged, however, that each sign exceeded the 150 square feet area maximum permitted by the Highway Commission's regulations. WAC 252-40-020(11) (1961) (superseded by WAC 252-40-020(11) (1972)). Finally, the state also alleged that the location of each of the five signs violated the Highway Commission's spacing regulations because they were within 2 miles of an interstate intersection. WAC 252-40-070(1) (1961) (superseded by WAC 252-40-070(1) (1972)).[4]

---

[3]WAC 252-40-020 and -020(11) (1961) provided: "Erection or maintenance of signs having any of the following characteristics is prohibited in protected or scenic areas notwithstanding any other provision of the act and these regulations.

". . .

"(11) Signs which exceed twenty feet in length, width or height, or one hundred fifty square feet in area, including border and trim but excluding supports, except class 3 signs not more than fifty feet from, and advertising activities being conducted upon the real property where the sign is located."

[4]WAC 252-40-070 and -070(1) (1972) provide: "No Type 4 or Type 5 signs which are visible from the main-traveled way of the interstate system shall be erected or maintained in any manner inconsistent with the following:

"(1) In advance of an intersection of the main-traveled way of the interstate highway and an exit roadway, such signs visible to interstate system traffic approaching such intersection may not be permitted to exceed the following number:

| "Distance from intersection | Number of signs |
|---|---|
| "0-2 miles | 0 |
| "2-5 miles | 6 |
| "More than 5 miles | Average of one sign per mile |

"The specified distances shall be measured to the nearest point of the intersection of the traveled way of the exit roadway and the main-traveled way of the interstate highway."

Defendant's answer, filed September 16, 1970, admitted that it maintained the signs. Defendant also admitted that the Thurston County sign exceeded 150 square feet in area. Defendant denied, however, that the four Lewis County signs were oversized or improperly spaced along I-5. Defendant affirmatively pleaded that the state's action was unconstitutional because federal highway advertising control legislation preempted state law and, alternatively, that the state's action amounted to a public taking of private property without just compensation in violation of defendant's Fifth Amendment rights.[5]

On May 10, 1971, the Scenic Vistas Act of 1971 became the law of this state. This statute significantly amended the 1961 act. Although the definition of "maintain" was not changed (RCW 47.42.020(4)), the entire regulatory scheme built around the 1961 act's definition of "protected area" was replaced with a different set of legislative provisions. Thus, the 1961 act provided, in part, "Except as permitted under this chapter, no person shall erect or maintain a sign within a protected area . . ." (i.e., within 660 feet of the edge of the right-of-way). Laws of 1961, ch. 96, § 3, formerly RCW 47.42.030. The Scenic Vistas Act amends this to read: "Except as permitted under this chapter, no person shall erect or maintain a sign which is visible from the main traveled way of the interstate system, . . ." RCW 47.42.030. Insofar as we are concerned in this case, the 12-mile rule continues in effect, although such permissible signs are now designated by regulation as Type 4 signs, rather than Type 3. See RCW 47.42.040(4);[6] WAC 252-40-040(4).[7] The

---

[5]Defendant also pleaded that the trial court, Lewis County Superior Court, lacked jurisdiction over the Thurston County sign. Defendant subsequently withdrew this defense for his own convenience in litigating the five issues at one hearing, instead of piecemeal.

[6]RCW 47.42.040 and .040(4) provide: "It is declared to be the policy of the state that no signs which are visible from the main traveled way of the interstate system, primary system, or scenic system shall be erected or maintained except the following types:

". . .

"(4) Signs, not inconsistent with the policy of this chapter and the

Highway Commission's maximum area and spacing regulations are unchanged insofar as they apply to this case. WAC 252-40-020 (11) ;[8] WAC 252-40-070 (1).[9]

national policy set forth in section 131 of title 23, United States Code as codified and enacted by Public Law 85-767 and amended only by section 106, Public Law 86-342, and the national standards promulgated thereunder by the secretary of commerce or the secretary of transportation, advertising activities being conducted at a location within twelve miles of the point at which such signs are located: *Provided,* That no sign lawfully erected pursuant to this subsection adjacent to the interstate system and outside commercial and industrial areas shall be maintained by any person after three years from May 10, 1971;"

[7]WAC 252-40-040 and -040(4) provide: "Signs shall be classified as follows:

". . .

"(4) . . . Signs not prohibited by state law which are consistent with the applicable provisions of these regulations and which advertise activities conducted within twelve air miles of such signs."

[8]WAC 252-40-020 and -020(11) provide: "Notwithstanding any other provision of the act or these regulations, no signs visible from the main-traveled way of the interstate system, primary system, or scenic system which have any of the following characteristics shall be erected or maintained:

". . .

"(11) Signs which exceed twenty feet in length, width or height, or one hundred fifty square feet in area, including border and trim but excluding supports, except:

"(a) Larger signs as permitted within commercial and industrial areas adjacent to the primary system pursuant to section 7, chapter 62, Laws of 1971 ex. sess.; and

"(b) Type 3 signs not more than fifty feet from the advertised activity."

[9]WAC 252-40-070 and -070(1) provide: "No Type 4 or Type 5 signs which are visible from the main-traveled way of the interstate system shall be erected or maintained in any manner inconsistent with the following:

"(1) In advance of an intersection of the main-traveled way of the interstate highway and an exit roadway, such signs visible to interstate system traffic approaching such intersection may not be permitted to exceed the following number:

| "Distance from intersection | Number of signs |
| --- | --- |
| "0-2 miles | 0 |
| "2-5 miles | 6 |
| "More than 5 miles | Average of one sign per mile |

"The specified distances shall be measured to the nearest point of the intersection of the traveled way of the exit roadway and the main-traveled way of the interstate highway."

The Scenic Vistas Act, unlike the Highway Advertising Control Act, also provided for compensation upon the removal of highway advertising signs. *See* RCW 47.42.102(1) and RCW 47.42.102(2).[10] The statute specifically provides that

In no event, however, shall compensation be paid for the taking or removal of signs adjacent to the interstate system and the scenic system which became subject to removal pursuant to [The Highway Advertising Control Act of 1961 as amended in 1963] prior to May 10, 1971 . . . [*i.e.*, the effective date of the Scenic Vistas Act].

RCW 47.42.102(3).

On October 13, 1971, the state moved for summary judgment and attached to its motion the affidavits of two engineers. The affidavits establish that the five signs are greater than 150 square feet in area and within 2 miles of an intersection. Moreover, the affidavits state that the size and location measurements were taken on October 1, 1970 and April 2, 1971, *i.e.*, before the Scenic Vistas Act of 1971 became effective.

Defendant moved to amend its answer on November 23, 1971. The amended answer added an affirmative defense,

[10]RCW 47.42.102(1) and (2) provide:

"(1) Just compensation shall be paid upon the removal of the following outdoor advertising signs:

"(a) Those signs within six hundred and sixty feet of the nearest edge of the right of way of the interstate system and the primary system which were lawfully in existence on October 22, 1965;

"(b) Those signs lawfully within six hundred and sixty feet of the nearest edge of the right of way of any highway made a part of the interstate or primary system between October 21, 1965 and January 1, 1968; and

"(c) Those signs lawfully erected within six hundred and sixty feet of the nearest edge of the right of way of the interstate system and the primary system on or after January 1, 1968.

"(2) Such compensation shall be paid for the following:

"(a) The taking from the owner of such sign, display, or device of all right, title, leasehold, and interest in such sign, display, or device; and

"(b) The taking from the owner of the real property on which the sign, display, or device is located, of the right to erect and maintain such signs, displays, and devices thereon."

namely that the Scenic Vistas Act provided for compensation and that the state had not offered to pay defendant for its interest in the five signs. On the same date, defendant also filed the affidavit of its vice-president which stated that the state had not paid or offered to pay for the signs and that the fair market value of each was $4,000.

The trial court held that there was no genuine issue of fact and rendered summary judgment in favor of the state. The trial court found that defendant had raised no issue of fact regarding the signs' violation of the Highway Commission regulations promulgated both under the 1961 and the 1971 act, since the state's affidavits establishing the signs as being oversized and improperly spaced were unrefuted. Secondly, the court held that *Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968) controlled the constitutional and federal preemption questions raised by defendant and resolved those issues in the state's favor. Finally, the court interpreted RCW 47.42.102(3) as expressly excluding defendant from the class of sign owners entitled to compensation because all five signs violated the 1961, as well as the 1971, act. Defendant appeals from each of these rulings. We agree with the trial court and affirm the summary judgment.

■ Defendant first argues that his answer denying that any of the signs were oversized or improperly placed is sufficient to place in issue the matters denied. In our view, however, what was said in *Tait v. KING Broadcasting Co.,* 1 Wn. App. 250, 460 P.2d 307 (1969) at page 255 is applicable here:

> In motions for summary judgment the moving party has the burden of showing there is no genuine issue of material fact. Once this has been done by appropriate affidavits and discovery procedures, the other party may not rely on his pleadings unsupported by evidentiary facts. *W. G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 441, 438 P.2d 867 (1968); *Reed v. Streib,* 65 Wn.2d 700, 706, 399 P.2d 338 (1965).

The state carried its burden of producing evidence that

defendant's signs were unlawful. Defendant's affidavit relates solely to valuation and compensation and does not put in issue any material fact relating to the signs' size or location along the highway.

■ Defendant next argues that the *Markham* decision does not control the disposition of the federal preemption or the Fifth Amendment questions. We disagree. Defendant raises the same issues in this appeal as were decided adversely to his position in the Supreme Court's earlier decision. Admittedly, the Scenic Vistas Act of 1971, substantially alters the regulatory scheme. This alteration, however, is even more than the original scheme directed toward the promotion of traffic safety which, in *Markham*, was expressly held to be a proper purpose for the exercise of the police power. The 1961 act accomplished its goal of eliminating distracting highway billboards by arbitrarily regulating all land within 660 feet of the edge of the interstate highway right-of-way. The 1961 act did not make provision for any exemption in case a sign in the regulated area could not be seen from the actual roadbed. The Scenic Vistas Act, however, adopts visibility as *the* regulatory criterion. In our view, the 1971 act is thus a legislative exercise of the police power even more relevant to traffic safety purposes than was the 1961 act.

■ Finally, defendant claims that it is entitled to compensation under the 1971 act. Defendant urges this court to apply RCW 47.42.102(1) and (2) retroactively and to declare RCW 47.42.102(3) unconstitutional as violative of the equal protection clause. In effect, we are urged to rewrite the compensation provision of the Scenic Vistas Act of 1971. We are urged to construe the statute so that it provides compensation for the removal of certain *illegal* signs when the legislature has in the clearest and most unambiguous manner possible enacted that the state is *not* to compensate for the removal of those signs. Since we reject defendant's equal protection argument, RCW 47.42.102(3) compels the rejection of defendant's claim as a matter of law.

It is axiomatic that the guarantee of equal protection of the laws requires that reasonable ground must exist for making a distinction between those within and those without a specified class. *Seattle v. See,* 67 Wn.2d 475, 408 P.2d 262 (1965). Equal protection does not mean identity of treatment, because the very act of classification involves some degree of discrimination. Equal protection does require, however, that the classification rest on real and not imaginary differences and that the distinction drawn by the statute bear some rational connection to a state interest. *Markham Advertising Co. v. State, supra.*

Defendant argues that RCW 47.42.102(3) violates these principles because it denies compensation to a class of sign owners indistinguishable from another class of sign owners who are provided compensation by RCW 47.42.102(1) and (2). This contention is patently frivolous. The disfavored class owned illegal signs on May 10, 1971, while the favored class owned legal signs on the same date. In our view, a statutory classification that is based on the distinction between legal and illegal conduct is a classification that rests on a real and not an imaginary difference, at least for purposes of the equal protection clause.

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.