[No. 45281. En Banc. November 21, 1979.]

ACKERLEY COMMUNICATIONS, INC., ET AL, *Respondents*, v.
THE CITY OF SEATTLE, ET AL, *Appellants.*

DIAMOND PARKING, INC., *Respondent*, v. THE CITY
OF SEATTLE, ET AL, *Appellants.*

*Douglas N. Jewett, City Attorney,* and *Charles D. Brown, Assistant,* for appellants.

*Bogle & Gates, Ronald T. Schaps, Lycette, Diamond & Sylvester,* and *Lyle L. Iversen,* for respondents.

*Lee Kraft* on behalf of City of Bellevue and *George M. Mack,* amici curiae.

Horowitz, J.—This appeal in consolidated actions for a declaratory judgment and injunctive relief raises the question whether Seattle ordinance No. 90138 as amended by ordinance No. 97025 (the Ordinance) is valid as applied to respondent billboard owners. We hold that it is, and therefore reverse.

The Seattle Ordinance, enacted in 1968, is a part of the coordinated efforts of federal, state and local governments to preserve the natural beauty of our nation's scenic vistas and to protect the public health and safety on the highways by means of regulating the placement, size, etc., of outdoor advertising signs and billboards (signs) along the highways. The Ordinance regulates those signs which are within 660 feet of, and visible from, designated scenic or landscaped sections of highway within the city. It requires removal of certain of these signs which do not meet the Ordinance's specifications after a 3–year amortization period. The City's Board of Adjustment may grant extensions of the amortization period for an additional period up to 7 years under the provisions of the Ordinance. It may also grant variances which would allow the maintenance of signs which otherwise do not conform to all the Ordinance's regulations. The Ordinance does not provide for compensation to the owners of signs which are removed pursuant to its terms.

Respondents in this action, Ackerley Communications, Inc., Maronco, Inc., and Diamond Parking, Inc. (or their predecessors in interest), were all notified by the City in 1974 or 1975 that their signs were in violation of the Ordinance and would have to be brought into compliance or removed. Respondents then sought (1) declaratory judgments that the Ordinance was in conflict with state law and unconstitutional, and (2) orders restraining the City from enforcing it, in the Superior Court for King County. The actions were consolidated in 1976. Various continuances postponed trial of the matter until 1977, when respondents moved for summary judgment on the ground the Ordinance conflicted with the newly enacted provisions of RCW 47.42.107. In November 1977 summary judgment was

granted in respondents' favor on the ground the Ordinance conflicted with the new statutory provision and that it was unconstitutional as applied to respondents. The City was enjoined from requiring removal of respondents' signs without compensation. The City appealed, and we reverse.

█ We note at the outset that under the rule stated in *Lange v. Woodway,* 79 Wn.2d 45, 483 P.2d 116 (1971) respondents have no standing to maintain an action for declaratory and injunctive relief for they have failed to exhaust their administrative remedies and show conclusively that the ordinance they challenge will harm them. In *Lange v. Woodway* the court applied this well settled rule requiring exhaustion of administrative remedies to a challenge to a zoning ordinance. It held the failure to seek a variance was fatal to the action for a declaratory judgment:

> If such alleviation [a variance] is available, then one must seek it before he will be heard to say that the ordinance injuriously affects him. If one cannot show that enforcement of the challenged ordinance harmfully affects him, then he has no standing to challenge the constitutionality of that ordinance.

*Lange v. Woodway, supra* at 48.

Respondents contend this rule does not apply because constitutional issues are raised which cannot be disposed of by the administrative appeal process. It is true that a party may always raise the question of the constitutionality of an administrative action *as a defense* in a judicial proceeding to enforce the administrative rule, and in such cases prior exhaustion of administrative remedies will not be required. *Yakima County Clean Air Authority v. Glascam Builders, Inc.,* 85 Wn.2d 255, 257, 534 P.2d 33 (1975). *See also United States v. Kissinger,* 250 F.2d 940 (3d Cir.), *cert. denied* 356 U.S. 958, 2 L. Ed. 2d 1066, 78 S. Ct. 995 (1958). In such cases, of course, the party has no need to show it is harmed by administrative action because it is already a defendant in enforcement proceedings. Where a party affirmatively seeks declaratory or injunctive relief, however, it must show that its remedies have been exhausted in

order to show it has standing to raise even a constitutional issue. As noted by the court in *Lange v. Woodway*:

> The fact that administrative variance procedures do not address themselves to the underlying constitutional validity of the ordinance in question has no bearing on the question of whether a party has standing to urge the unconstitutionality of the ordinance in the courts. The question is not whether the administrative procedure can respond to the charge of unconstitutionality, but whether the procedure can alleviate any harmful consequence of the ordinance to the complaining party.

*Lange v. Woodway, supra* at 48.

This distinction has also been noted and applied by the United States Supreme Court. In *Public Util. Comm'n v. United States,* 355 U.S. 534, 539–40, 2 L. Ed. 2d 470, 78 S. Ct. 446 (1958) the court noted:

> If . . . an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.

*See also Aircraft & Diesel Equip. Corp. v. Hirsch,* 331 U.S. 752, 772, 91 L. Ed. 1796, 67 S. Ct. 1493 (1947).

We recognize that where no administrative remedy is available, or where such remedy is patently inadequate, a party may be allowed to raise constitutional issues in a declaratory judgment proceeding without being required to exhaust administrative channels needlessly or to the party's injury. *See Bare v. Gorton,* 84 Wn.2d 380, 382, 526 P.2d 379 (1974). *See also Aircraft & Diesel Equip. Corp. v. Hirsch, supra* at 773. Respondents have not shown that such is the case here.

The Seattle Ordinance provides two forms of administrative relief. Section 4 of Ordinance No. 97025, amending section 3 of Ordinance No. 90138, defines those signs which shall be unlawful by such criteria as location, visibility, size, and type of business advertised. Pursuant to section 7 of Ordinance No. 97025, nonconforming signs must either be made to conform or removed within 3 years. As one form of administrative relief, this section provides for an extension of time for removal, at the discretion of the City's Board of

Adjustment, for an additional period of up to 7 years. Such an extension would allow an even greater period of time over which the sign owner could recover his investment in the sign. It would not necessarily completely avoid the burden of terminating the sign, though, if the useful life of the sign structure would extend beyond the termination date under the Ordinance.

Section 6 of the Ordinance provides a second form of relief, however—a variance. Variances may be issued by the Board of Adjustment for signs falling within any of nine designated categories, where to do so would not violate the intent and purposes of the Ordinance. The section provides:

> Upon written application and payment of a filing fee of $50.00, the Board of Adjustment is authorized to issue sign variances in the following instances, but only when the issuance of such sign variance is within the intent and purposes of this ordinance and will not be contrary to the public interest, detrimental to the public welfare or safety, injurious to property in the vicinity, and will not make difficult the viewing and comprehending by motorists and pedestrians of official or conforming signs, or increase the density of signs along a designated landscaped and/or scenic view section to an extent tending to constitute a hazard to traffic safety or a detriment to the appearance of the neighborhood, or impinge upon a view of scenic interest . . .

If a sign falls within one of the designated categories, the Board may authorize a modification of the regulations created by the Ordinance. Such a modification, according to the definition of a variance found in section 2, would be a "less literal interpretation or strict application of the provisions and requirements" of the Ordinance. Under section 3B.2 of the Ordinance as amended the Board may attach such conditions to the variance as are deemed necessary in the public interest. Although the Ordinance is not explicit in this regard, the only reasonable interpretation of the variance provisions appears to be that a variance would allow an otherwise nonconforming sign to remain standing—presumably indefinitely—as long as the requirements

of the variance provision are met. This remedy appears to provide a means by which a sign owner may completely avoid the requirement that a sign be removed.

Respondent Ackerley alleges it was not eligible for a variance under the terms of the Ordinance, but points to no facts in the record to support its allegation. In fact, the City has insisted throughout the course of this litigation that respondents should first pursue their administrative remedies. The record discloses that neither Ackerley nor its predecessor in interest sought a variance. Neither Ackerley nor respondent Maronco has made any showing that the administrative remedy of a variance is either unavailable or inadequate. Furthermore, while respondent Diamond was refused a 7–year extension of its amortization period, and was granted instead a 3–year extension, it did not appeal from the Board's adverse ruling. Diamond has not shown it sought a variance, which could have "alleviate[d] any harmful consequence of the ordinance." *Lange v. Woodway, supra* at 48. We conclude, then, that respondents are barred from maintaining a declaratory judgment action by the failure to pursue the administrative remedy available to them—a variance—which could have obviated any injury to them under the Ordinance.

Respondents can raise the substantive issues presented in a defense to any enforcement action by the City, civil or criminal. That such action will be taken is very evident. Prior to the entry of the appealed summary judgment enjoining enforcement, the City had taken substantial steps to enforce its Ordinance. Such steps include the institution of a criminal proceeding against respondent for refusing to abide by the Ordinance. The summary judgment ordered the criminal proceeding dismissed, apparently accepting the substantive principles advanced by respondents on this appeal. It may safely be presumed that upon the reversal of the summary judgment, the City conformable to its prior actions and under its continuing duty to enforce the appealed ordinance will continue its enforcement efforts both under the civil and criminal laws.

■ Should this court leave the substantive issues undetermined, the City will be confronted by respondents' same arguments for determination with resulting additional delays and expense which can now be obviated. The disposition of the issues next made, which provides additional reasons for reversal and dismissal of the summary judgment, is not merely advisory. Even if a litigant is itself barred from declaratory and injunctive relief, the court may still grant declaratory relief where the "real merits of the controversy are unsettled and the continuing question of great public importance exists." *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). See 1 W. Anderson, *Actions for Declaratory Judgments* 126 *et seq.* (2d ed. 1951), citing *State ex rel. Yakima Amusement Co. v. Yakima County,* 192 Wash. 179, 73 P.2d 759 (1939).

As pointed out in *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 815, 514 P.2d 137 (1973), the other elements being present, it is enough if the controversy concerns "the mature seeds" of any actual, present and existing dispute, "as distinguished from a possible dormant, hypothetical, speculative, or moot disagreement". *DeFunis v. Odegaard,* 84 Wn.2d 617, 628, 529 P.2d 438 (1974) also points out "We will retain an appeal and decide issues, even though moot, if they present matters of substantial public interest, particularly where final determination of the issue is essential in guiding the conduct of public officials". This court is more likely to decide the issues raised "where it is adequately briefed and argued, and where it appears that an opinion of the court would be beneficial to the public and to the other branches of the government, the court may exercise its discretion and render a declaratory judgment to resolve a question of constitutional interpretation." *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear,* 80 Wn.2d 175, 178, 492 P.2d 1012 (1972). No party suggests the public interest will be harmed by our deciding the substantial issues presented and fully argued and the parties do not ask that we refuse to resolve the issues so raised and determined by the appealed 9–page summary judgment.

## I. STATUTORY ISSUES

Respondents contend that both federal and state laws require that compensation be paid for the removal of their signs. We do not agree, for the basic reasons stated below, namely, that respondents' signs are outside the scope of the Federal Highway Beautification Act and RCW 47.42.102, and that RCW 47.42.107 may not constitutionally be applied in this case.

In order to place this question in its proper perspective, we must briefly summarize the relevant provisions of state and federal law. In 1958 the United States Congress initiated a national program involving voluntary participation by the states to regulate outdoor advertising signs within 660 feet of interstate highways in areas outside of commercial and industrial zones. Act of Aug. 27, 1958, Pub. L. No. 85–767, ch. 1, § 131, 72 Stat. 904. The State of Washington responded with an enactment of the Highway Advertising Control Act of 1961, Laws of 1961, ch. 96, p. 1575, amended by Laws of 1963, 1st Ex. Sess., ch. 3, p. 1287. The state act designated certain "protected" and "scenic" areas within 660 feet of interstate and state highways, respectively, and established criteria for advertising signs in those areas. Neither the state nor the federal act required that compensation be made to owners of those signs required to be removed under this coordinated plan. The state Highway Advertising Control Act and administrative regulations promulgated thereunder were the subject of a constitutional challenge in *Markham Advertising Co. v. State,* 73 Wn.2d 405, 439 P.2d 248 (1968) and were upheld by this court.

In 1965 the Congress amended its program with the Highway Beautification Act, Pub. L. No. 89–285, § 101, 79 Stat. 1028 (Oct. 22, 1965). Its provisions require each state to maintain "effective control" of outdoor signs within 660 feet of, and visible from, the interstate and primary highway systems as a condition of the state's receiving its full federal–aid highway funds apportionment. The penalty for failure to make provisions for "effective control" is the loss

of 10 percent of the state's allotted funds. 23 U.S.C. § 131(b), (c).

The act defines "effective control" for signs outside of urban areas. 23 U.S.C. § 131(c). Signs within commercial or industrial zones, however, are to be regulated under an agreement between the state and the Secretary of Transportation. 23 U.S.C. § 131(d). Just compensation is required to be paid for the removal of any signs under the act, the federal government paying 75 percent of the cost. 23 U.S.C. § 131(g). Finally, the federal act specifies that states may impose stricter limitations on signs along the federal highway systems than those established under the federal law. 23 U.S.C. § 131(k).

In order to implement the federal program in this state the legislature amended the Highway Advertising Control Act with the Scenic Vistas Act of 1971. Laws of 1971, 1st Ex. Sess., ch. 62. In accordance with the federal approach, the removal provisions of the state statute do not apply to signs within commercial or industrial zones as long as they conform to customary uses as defined by the statute. RCW 47.42.062. The act also provides for compensation to owners of signs removed pursuant to its terms. RCW 47.42.102. Finally, the statute affirmatively recognizes the right of counties, cities and towns to enact more restrictive outdoor sign regulations. RCW 47.42.048, .070.

Also in 1971, the State of Washington entered into an agreement with the Secretary of Transportation governing regulation under the federal program of outdoor signs within commercial and industrial zones. The agreement applies only to signs erected *after* June 1, 1971. It thus places no restrictions on respondents' signs, which were erected prior to that date. The agreement also specifically acknowledges that stricter requirements may be imposed than those established under its terms. Clause IV, *Agreement: For Carrying out National Policy, etc.,* signed October 20, 1971, by the Director of Highways of the Washington State Highway Commission and the Federal

Highway Administrator of the United States Department of Transportation.

We note first that the federal act (in 23 U.S.C. § 131(k)), the state statute (in RCW 47.42.048 and .070), and the intergovernmental agreement (in Clause IV) all recognize and acknowledge the right of lesser governmental entities to enact regulations governing outdoor signs which are stricter than those imposed by the federal and state acts. Thus it is clear that the state and federal enactments have not preempted the field of regulation of outdoor advertising.

We also note that the compensation requirements of the federal and state statutes discussed thus far only apply to signs which fall within the scope of those statutes. RCW 47.42.102 by its own terms restricts compensation to those signs removed pursuant to the provisions of RCW 47.42. It is not disputed that respondents' signs are not subject to that statute. Respondents contend, however, that the federal statute is broader, requiring compensation for any outdoor sign required to be removed for any reason. We do not agree.

Prior to a 1978 amendment, the language of 23 U.S.C. § 131(g) required compensation "upon the removal of any outdoor advertising sign, display, or device lawfully erected under State law" as a condition to the State's receiving its full highway fund allotment. Since signs within commercial and industrial zones which are not governed by an agreement between the State and the Department of Transportation are not regulated by, and are wholly outside the scope of, the federal statute, the only reasonable interpretation of the statutory language is that it does not require compensation for such signs. *Accord, Metromedia, Inc. v. San Diego,* ___ Cal. 3d ___, 592 P.2d 728, 154 Cal. Rptr. 212 (1979); *Modjeska Sign Studios, Inc. v. Berle,* 43 N.Y.2d 468, 373 N.E.2d 255, 402 N.Y.S.2d 359 (1977), *appeal dismissed,* 439 U.S. 809, 58 L. Ed. 2d 101, 99 S. Ct. 66 (1978). As noted by the Supreme Court of California in

*Metromedia, Inc. v. San Diego, supra,* the legislative history of the statute fully supports this interpretation. Furthermore, the statute was amended in 1978 to clarify the broad language of subsection (g), requiring just compensation for removal of signs, etc., "not permitted under subsection (c) [effective control in nonurban areas] of this section." The legislative history of this amendment, a part of the Surface Transportation Assistance Act of 1978, makes it clear that it is intended to clarify existing law and, contrary to respondent Ackerley's contention, requires compensation only for signs which do not meet the "effective control" requirements of the federal act. H.R. Rep. No. 95–1485, 95th Cong., 2d Sess., *reprinted in* [1978] U.S. Code Cong. & Ad. News 7295, 7310.[1] We conclude, then, that the federal Highway Beautification Act does not

---

[1]Respondent Ackerley has submitted copies of Department of Transportation memoranda regarding the proper construction of the 1978 amendments to 23 U.S.C. § 131(g) and (k). A memorandum from the Federal Highway Administrator to certain Regional Federal Highway Administrators dated March 6, 1978, states that "all lawfully erected signs still in existence on November 6, 1978, and those additional signs which were removed prior to November 6, 1978, but were the subject of litigation pending on that date are entitled to compensation under 23 U.S.C. 131(g) and (k)." This statement must be read in the context of subsection (g) as amended, which limits the scope of the compensation requirement to signs "not permitted under subsection (c) of this section." Since the signs in question here are not within the scope of subsection (c) either directly or through the agreement between the Department of Transportation and the State of Washington we can only conclude the compensation provision of subsection (g) is not applicable here. Subsection (k) recognizes the right of a state to impose stricter limitations on outdoor advertising on federal aid highway systems, and requires compensation if signs within the scope of subsection (g) are terminated under such state regulations. There is nothing in the statutory language, however, to suggest that signs *not* within the scope of the federal program are included in the compensation requirement.

This interpretation is supported by a memorandum from the Department of Transportation's Chief Counsel to the Highway Administrator, dated March 5, 1979. This memo corrects an earlier interpretation of the 1978 amendments. It does not take issue with the previous interpretation that the compensation requirement applies to those signs which fall within the scope of subsection (c). It is rather concerned with the language of the previous interpretation stating that compensation is required for signs "legally in existence" on the effective date of the amendments. The correct interpretation of the statute, the memo points out, is that compensation must be made for signs lawfully erected under state law in

require compensation for those outdoor signs not within the scope of its provisions for effective control. Since respondents' signs are indisputably in commercial and industrial areas of the city, which are not within the effective control provision of the act, and having been erected prior to 1971, are not covered by the agreement between the State of Washington and the Department of Transportation, it is clear that none of the provisions of the federal act, including the compensation requirement, apply to respondents' signs.

In 1977, while the consolidated actions below were pending, the legislature enacted a more sweeping compensation provision, RCW 47.42.107. Laws of 1977, 1st Ex. Sess., ch. 141, § 1. Under the provisions of this statute:

> (1) Just compensation shall be paid upon the removal of any existing sign pursuant to the provisions of any resolution or ordinance of any county, city, or town of the state of Washington by such county, city, or town if:
> (a) Such sign was lawfully in existence on May 10, 1971 (the effective date of the Scenic Vistas Act of 1971)
> . . .

On the basis of this statute respondents moved for summary judgment in September 1977, more than 2 years after they had received notification that their signs were subject to immediate removal. The trial court granted respondents' motion, finding that the statute required that compensation be paid to respondents, and that the City Ordinance therefore conflicted with state law.

 We agree with the City, however, that the interpretation of the statute applied by the trial court is too broad. In holding the statute's provisions applicable to signs already subject to immediate removal by the City, in the exercise of its police power and without compensation,

---

existence, or the subject of pending litigation, on the effective date of the amendment. In the context of the statutory language and the preexisting interpretation that only signs within the scope of subsection (c) are involved—an interpretation with which the memo does not appear to take issue—the memorandum reinforces our view that removal of signs not within the scope of the federal program does not require compensation under 23 U.S.C. § 131(g) and (k).

the interpretation runs afoul of article 8, section 5 of the state constitution which prohibits the state or any municipality from giving a gift of public funds.

Article 8, section 5 prohibits the state or any subdivision thereof from making a gratuitous expenditure of public funds to any corporation or individual, even if the expenditure is made to achieve a laudable public purpose. *State ex rel. O'Connell v. Port of Seattle*, 65 Wn.2d 801, 399 P.2d 623 (1965); *State Highway Comm'n v. Pacific Northwest Bell Tel. Co.*, 59 Wn.2d 216, 367 P.2d 605 (1961). A gratuitous expenditure is one for which the public entity neither expects nor receives consideration. *Scott Paper Co. v. Anacortes*, 90 Wn.2d 19, 578 P.2d 1292 (1978); *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 459 P.2d 633 (1969). Such would be the case here if the provisions of RCW 47.42.107 were to be applied to respondents.

Of key importance in this regard is the fact that, at the time RCW 47.42.107 was enacted respondents' signs had already been subject to immediate removal without compensation under the City's exercise of its police power for more than 2 years. Only the fact that respondents had initiated litigation and postponed final determination of the matter for more than 2 years kept the signs in existence as late as 1977, when the legislation was passed. The City had by that time taken all steps necessary to terminate the signs, and had a right to do so without compensating the owners. The legislature could not then give new life to the signs and require compensation for their removal without requiring the City to make a gratuitous expenditure of public funds. The provision for retroactive application to signs in existence on May 10, 1971, is thus ineffective as to those signs already subject to removal on the effective date of the act. We conclude that the statute's requirement for compensation upon the removal of "existing" signs can only apply to those signs which are in existence, and which were not subject to immediate removal without compensation,

on the effective date of RCW 47.42.107.[2]

## II. CONSTITUTIONAL ISSUES

Respondents' original complaints alleged the Ordinance denied them equal protection of the laws by failing to provide compensation for the removal of their signs while owners of other signs removed pursuant to other laws were compensated. Respondents Ackerley and Maronco's second amended complaint also alleged the Ordinance deprived them of their First Amendment right of free speech, and that it was not a reasonable exercise of the police power and therefore effected an unconstitutional taking of property without compensation. The order of summary judgment below found the Ordinance to be in conflict with RCW 47.42.107 and declined to reach the other constitutional issues raised. Those issues were before the court, however, by virtue of respondents' complaints, and were fully briefed for this court. We would therefore be remiss if we did not point out that each of the constitutional questions raised by respondents below has been fully considered and laid to rest by this court's prior opinions.

In *Markham Advertising Co. v. State*, 73 Wn.2d 405, 426, 439 P.2d 248 (1968), *appeal dismissed*, 393 U.S. 316, 21 L. Ed. 2d 512, 89 S. Ct. 553, *rehearing denied*, 393 U.S. 1112, 21 L. Ed. 2d 813, 89 S. Ct. 854 (1969), this court unequivocally held that "the regulation of outdoor advertising is a reasonable and proper exercise of the police power." We cited many opinions from other courts which are in accord with that rule, and can now add to that list two recent decisions. *Metromedia, Inc. v. San Diego, supra; Suffolk Outdoor Advertising Co. v. Hulse*, 43 N.Y.2d 483,

---

[2]Respondent Ackerley's argument that the City has no standing to raise the question of the constitutionality of the trial court's interpretation of RCW 47.42-.107 is misplaced. A municipality may challenge a statute on the ground it exceeds the authority of the legislature under the state constitution. *Kirkland v. Steen*, 68 Wn.2d 804, 806, 416 P.2d 80 (1966). Furthermore, the City is a defendant in this action and need not show standing in order to argue a legal theory which is applicable to the case.

489, 373 N.E.2d 263, 402 N.Y.S.2d 368 (1977), *appeal dismissed,* 439 U.S. 808, 58 L. Ed. 2d 101, 99 S. Ct. 66 (1978). The ordinance in question here specifically recites that its intent and purpose is to "protect the public health, safety, welfare, convenience and the enjoyment of public travel . . . and to conserve natural and man–made beauty" by regulating outdoor signs in designated areas of the city. The court approved precisely these objectives as legitimate objectives for the exercise of the police power in *Markham Advertising* at page 422. Although respondents contend that public safety is not in fact an objective of the Ordinance, and that the sole objective of the Ordinance is to promote aesthetic values, they point to no evidence to support their claim, which directly contradicts the language of the Ordinance itself. We find this case indistinguishable from *Markham Advertising* with regard to the question of the proper exercise of the police power. We therefore conclude that the Ordinance was a legitimate exercise of the police power and thus does not effect an unconstitutional taking of property without compensation. *See also Modjeska Sign Studios, Inc. v. Berle, supra.*

█ Respondents next contend the Ordinance denies them equal protection of the laws because owners of signs removed pursuant to federal and state statutes are compensated, while respondents' signs are subject to removal without compensation. The Ordinance does not make any distinction which is either arbitrary or invidious. *See Markham Advertising, supra* at 427–28. It is a valid exercise of the City's police power to terminate certain land uses which it deems adverse to the public health and welfare within a reasonable amortization period. Under this Ordinance respondents' signs became illegal uses of the land and were subject to removal. The fact that the state and federal governments have chosen to regulate by different means certain other signs, in other areas of the state or erected at a later date than respondents' signs, does not reflect on the validity of the City's action. Respondents have not been denied equal protection of the laws. *See*

*Metromedia, Inc. v. San Diego, supra. See also State v. Yard Birds, Inc.,* 9 Wn. App. 514, 513 P.2d 1030 (1973).

■ Finally, respondents contend the Ordinance denies them freedom of speech under the First Amendment. In *State v. Lotze,* 92 Wn.2d 52, 593 P.2d 811 (1979) this court held that the traffic safety purpose of outdoor sign regulation, which we approved in *Markham Advertising* and which is also present here, is sufficiently compelling to sustain reasonable restrictions on outdoor advertising, even when the speech affected is political. The restrictions of RCW 47.42 which were upheld in *Lotze* are not different in any material respect from the placement and size restrictions imposed by the Ordinance here on respondents' purely commercial speech. Like the statutory scheme approved in *Lotze,* the Ordinance "represents a reasonable place and manner limitation on speech leaving ample alternative channels of communication". *State v. Lotze, supra* at 60. We conclude the Ordinance does not violate respondents' First Amendment rights.[3]

The order of the trial court is reversed and the case is dismissed.

UTTER, C.J., and DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

WRIGHT, J. (concurring in part)—The majority correctly determined that respondents are barred from maintaining a declaratory judgment action by reason of having failed to pursue available administrative remedies. That determination is sufficient and any further discussion, therefore, unnecessary.

---

[3]We do not reach the question of the constitutionality of RCW 47.42.107 as applied to other signs which are not within the scope of the federal program, but which are required to be removed by local ordinance after the effective date of the statute. This issue was raised by amici curiae but was not briefed or argued by the parties. It is therefore not appropriate for this court to reach the issue. *State v. Smith,* 88 Wn.2d 639, 645 n.1, 564 P.2d 1154 (1977); *Long v. Odell,* 60 Wn.2d 151, 154, 372 P.2d 548 (1962).

BRACHTENBACH, J. (concurring in part; dissenting in part)—I concur in part and dissent in part.

I agree with the majority that the respondents are barred from maintaining a declaratory judgment action by having failed first to pursue their administrative remedies. That should end the matter.

However, the majority steps forward and gratuitously renders an extensive advisory opinion interpreting state and federal statutes. Further it decides constitutional issues involving equal protection, police power and First Amendment rights. The only basis for this voluntary excursion into issues potentially present in a lawsuit not even before us is the majority's conclusion that it presumes that the City will continue its enforcement efforts and the respondents could raise these issues as a defense to such enforcement action by the City. Thus the majority deals with anticipated questions in a suit which is not even in existence.

We have held since the enactment of the Uniform Declaratory Judgments Act, RCW 7.24, that there must exist an actual dispute between the parties as distinguished from a possible or potential dispute. *Washington Beauty College, Inc. v. Huse,* 195 Wash. 160, 164, 80 P.2d 403 (1938); *DeGrief v. Seattle,* 50 Wn.2d 1, 14, 297 P.2d 940 (1956). "The act may not be used for the purpose of obtaining purely advisory opinions." *Seattle–First Nat'l Bank v. Crosby,* 42 Wn.2d 234, 245, 254 P.2d 732 (1953).

This principle has been declared to be a sound rule of law. 1 W. Anderson, *Actions for Declaratory Judgments* § 65, at 130 (2d ed. 1951). I agree with the Michigan Supreme Court that a declaratory judgment statute does not constitute the court as "a fountain of legal advice." *Flint v. Consumers Power Co.,* 290 Mich. 305, 309, 287 N.W. 475 (1939).

The majority in effect admits that it is *anticipating* defenses which respondents *could raise* to *any* enforcement action by the City. To anticipate is to consider in advance, to cause to occur prematurely, to deal with in advance, to fulfill beforehand, or to write in a way conditioned by

knowledge or expectation of what will be treated later. *Webster's Third New International Dictionary* 94 (1971).

I disagree with some of the conclusions of the majority's advisory opinion, but will not extend this dissent therewith since I view the majority's pronouncements as not binding on anyone, including these parties.

ROSELLINI and STAFFORD, JJ., concur with BRACHTEN-BACH, J.

Reconsideration denied February 14, 1980.