IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

NINA M. FIREY, a single woman,                    )
                                                  )       No. 33232-2-III
                    Appellant,                    )
                                                  )
          v.                                      )
                                                  )
NICOLASSA OROZCO and MIGUEL                        )
OROZCO, wife and husband and the                  )
marital community composed thereof,               )
d/b/a OROZCO CONSTRUCTION; and                    )
UNITED STATES FIRE INSURANCE                      )
COMPANY; CHRISTOPHER COOK and                     )
"JANE DOE" COOK, husband and wife                 )
and the marital community composed                )       UNPUBLISHED OPINION
thereof; ALBERT OTTERNESS and                     )
"JANE DOE" OTTERNESS, husband and                 )
wife and the marital community composed           )
thereof, d/b/a AOK CONSTRUCTION,                  )
and AMERICAN CONTRACTORS                          )
INDEMNITY COMPANY,                                )
                                                  )
                    Defendants,                   )
                                                  )
TAMMIE MYERS and RON MYERS,                        )
husband and wife, and the marital                 )
community composed thereof;                        )
KENNETH BANNISTER and DORIS                       )
BANNISTER, husband and wife and the               )
marital community composed thereof;               )

No. 33232-2-III
*Firey v. Orozco*

K & T CONSTRUCTION, a partnership;     )
STATE FARM FIRE & CASUALTY,            )
MICHAEL F. LYON and JOAN D.            )
LYON, husband and wife and the marital )
community composed thereof, d/b/a       )
CROWN MOBILE HOME SET-UP/SVC;          )
RLI INSURANCE COMPANY,                 )
                                        )
                        Respondents,    )

LAWRENCE-BERREY, J. — We are asked to decide whether the trial court properly

granted summary judgment to K&T Construction and Crown Mobile Homes. In this

lawsuit, Nina Firey claims breach of contract against the first five of several contractors

she hired to make livable a house that she purchased from a foreclosure sale. The central

issue on appeal is whether the trial court erred in determining that the opinions of Ms.

Firey's two experts lacked a sufficient factual basis to withstand summary judgment. We

hold that the trial court did not err and affirm the summary judgment dismissals.

## FACTS

Nina Firey purchased a vacant, foreclosed home in Centralia, Washington, in

2011. The purchase price was $75,000. The home was in significant disrepair. Ms.

Firey obtained a prepurchase home inspection that revealed a number of issues that

needed to be addressed to rehabilitate the home. Ms. Firey had a budget of $25,000 to

complete the necessary repairs.

Ms. Firey first hired K&T Construction to perform work on the home. K&T

Construction is owned by Kenneth Bannister. Mr. Bannister said he would work for an

2

hourly rate plus cost of materials. Invoices submitted for each week's work show that K&T Construction worked on the house during the latter half of May 2011. Ms. Firey fired K&T Construction because she believed its hourly rate of $100 was excessive.

After firing K&T Construction, Ms. Firey hired Michael Lyon, d/b/a Crown Mobile Homes Set-Up, on a time and materials basis. Crown Mobile did not have a written contract identifying the scope of work to be performed, nor were there written estimates, quotes, plans, or specifications. With the exception of the final contractor, none of the contractors who worked on Ms. Firey's house had written contracts, plans, bids, or estimates. Crown Mobile worked on the project for approximately 10 days in late May and June 2011. It charged Ms. Firey $6,540. Crown Mobile persuaded Ms. Firey that it was too busy to continue the project and assisted Ms. Firey in hiring her third contractor.

Over the next few months, Ms. Firey went through several other contractors and a friend to continue repairs to the house.[1] In August or September 2011, Ms. Firey hired her last contractor, Bar-None Construction.

Bar-None began a series of repairs. Eventually, Bar-None advised Ms. Firey that additional repairs should not be done until the house was re-leveled. Ms. Firey directed

---

[1] Respondents contend that Ms. Firey hired a total of 12 contractors. The record shows at least 10 contractors worked on the project, but we are unable to determine how many contractors performed general repairs and how many performed specific projects.

Bar-None to re-level the house. This caused structural damage throughout the house, requiring Bar-None to repair some of its own work in the process. Around February 2012, Bar-None prepared a scope of work document, setting forth the work it had performed, the amounts charged, and the scope and charges to complete necessary repairs. The total cost of completed and remaining repairs exceeded $100,000.

In July 2012, Ms. Firey filed a single complaint against the first five contractors and their insurance companies. She asserted a breach of contract claim against the contractors. Ms. Firey settled with two of the contractors. This action proceeded against K&T Construction and Crown Mobile and their respective insurance companies. The remaining contractor is not a party to this appeal.

K&T Construction and Crown Mobile filed separate summary judgment motions. Each construction company presented its own argument and documents to support its motion. The trial court reviewed the summary judgment motions independently from each other.

K&T Construction. In its summary judgment motion, K&T Construction argued that Ms. Firey could not bring a claim for breach of contract based on work not performed or left uncompleted because she terminated the contract when she fired it and would not let it finish the project.

Attached to K&T Construction's summary judgment motion were portions of Ms. Firey's deposition. In her deposition, Ms. Firey admitted that she was paying K&T

4

Construction an hourly rate for the time that it spent working on the home and that she kept track of its hours. As for the scope of the project, Ms. Firey told K&T Construction that she had a very limited budget of $25,000 and wanted a "fully functional house." Clerk's Papers (CP) at 52. In her deposition, Ms. Firey stated that she did not tell K&T what work to perform, except not to touch the front porch. When asked if there were other terms discussed between her and K&T Construction, Ms. Firey responded, "There were probably little things here and there, but not on the big picture, no." CP at 52. She also stated that she fired K&T Construction because she was angry about the hourly rate she was paying. Later in her deposition, she explained that after she fired K&T Construction, she noticed workmanship problems.

In a declaration submitted after her deposition, Ms. Firey said that she compiled a list of projects that she wanted completed, but did not direct how the work would be performed. There is no indication that she provided her list to K&T Construction. Ms. Firey said in her declaration that she was concerned that the work was not being done properly, "including electrical and plumbing work that [Ms. Firey] later realized K&T was not authorized to do." CP at 302. She said that K&T Construction damaged existing structures, including the front porch and kitchen cabinets.

Curiously, the name of the second contractor, "Crown," appears on this list. The list contains dates by some of the projects, but the dates do not correspond with K&T Construction's work on the house. For example, K&T Construction's last invoice was

dated June 3, 2011, whereas the dates on Ms. Firey's list start with June 16, 2011. Ms. Firey checked off some of the projects as completed, but did not attribute the work to any particular contractor. There was no other evidence to establish the scope of K&T Construction's work on Ms. Firey's home.

Ms. Firey retained expert Vincent McClure, who created a report that estimated the cost impacts to the Firey house caused by the various contractors who worked on the project. In addition, he filed a supplementary declaration to his report to detail the scope of the work done by each contractor and to identify the repairs necessitated by each of the various contractors. Mr. McClure based his report on his visits to the house on September 20, 2012, and July 24, 2013, and on materials provided by Ms. Firey, including undated photographs she took of the house and her defect list. He also reviewed various statements and declarations in the record, the home inspection report written before construction started, and the Lewis County Building Department file.

Mr. McClure's initial report noted that he first observed the house after the leveling was completed by the twelfth contractor. This would have been several months after K&T Construction and Crown Mobile ceased working on the project, and after several other contractors made repairs and alterations. Mr. McClure noted 16 areas where he viewed defects and/or code violations. He attributed some of the violations to the work of Orozco Construction and AOK Construction. However, other subsections contained general observations and/or defects regarding the proper installation and

6

placement of windows, defects in the waterproofing, flooring levels, attic rafters, connection of the shed roof to the house, and more. Mr. McClure concludes "Much of the work done by K&T Construction, Crown Mobile, Orozco Construction, Chris Cook, and AOK Construction is grossly below the standards of the industry and is unacceptable. The exterior wall siding, the building wrap, the windows, some of the roofing, the floor underlayment, and all of the other items discussed above are unacceptable and need to be removed and replaced or, in a few cases, repaired." CP at 20.

In his supplemental declaration, Mr. McClure sought to detail the defective work completed by each defendant contractor. For K&T Construction, Mr. McClure listed 13 instances of work that was defective or completed in the wrong order. For example, he stated that K&T Construction: "Failed to obtain permits and did both electrical and plumbing work with out proper state licenses," "Attempted to level one corner of the kitchen after installing the kitchen window," "Failed to remove and replace dry rotted wood before attempting to level the kitchen. As a result, most of their leveling efforts were ineffective," "[I]nstalled underlayment over rotted and moldy floor. Ms. Firey is allergic to mold. Also, covering moldy floor and rotted wood just hides the problem and leads to future problems," plus more. CP at 7-8. Mr. McClure did not claim to have personal knowledge of these defects.

In addition to Mr. McClure's declarations, Ms. Firey also presented two declarations from Mr. Hamilton of Bar-None, who was the last contractor to perform

7

work on the home. Mr. Hamilton maintained that part of his work on the home included repairing work of the prior contractors. He maintained that the repairs were needed due to defective work and due to the damage caused by the re-leveling. However, Mr. Hamilton's declaration did not document specific defects. Nor did he identify work attributed to any specific defendant.

Crown Mobile. Crown Mobile contended on summary judgment that Ms. Firey did not and could not produce evidence that Crown Mobile failed to complete the work under the time and materials contract. Crown Mobile maintained that Ms. Firey could not produce evidence of defective work because the majority of the work was demolished or replaced. "This litigation has been going on for over a year and [Ms. Firey] has yet to furnish any documentary, photographic or physical evidence to support the elements of her breach of contract claim." CP at 73-74. Crown contended that Ms. Firey's approach to the remodel was flawed from the outset and caused the problems that she was imposing on the defendant contractors.

Mr. Lyon stated in his declaration in support of summary judgment that the bulk of Crown Mobile's work consisted of digging out the foundation by hand to create a crawl space and hauling away the dirt and debris. He said Crown Mobile also removed wall coverings, installed some insulation in the crawl space and attic, and built a closet around the hot water heater. Mr. Lyon maintained that all of Crown Mobile's work was completed at the direction of Ms. Firey. He also maintained that Crown Mobile did not

install any underlayment for flooring, did not do electrical work, and did not work on plumbing. Mr. Lyon maintained that had his company performed electrical and plumbing, he would have charged Ms. Firey for the work, and the work would have appeared on its invoices.

Crown Mobile also submitted a declaration from Construction Dispute Resolution Vice President Bryce Given. Mr. Given stated that he visited Ms. Firey's home and reviewed the record associated with the case. He found that none of Ms. Firey's experts or other evidence identified work performed by Crown Mobile that was allegedly defective, especially considering that both of Ms. Firey's experts admit that Crown Mobile's work was altered. As such, Mr. Bryce opined that it was impossible to conclude Crown Mobile caused any of the damage claimed by Ms. Firey.

Mr. McClure's and Mr. Hamilton's declarations were not specific to any one defendant. The same declarations applied to K&T Construction as well as Crown Mobile. As stated, Mr. McClure's initial report made general observations on defects. He made no connection between the work Ms. Firey contended that Crown Mobile completed and the defects identified by Mr. McClure.

In his second declaration, Mr. McClure stated that Crown Mobile "[i]mproperly leveled the house; the house wasn't level when they quit," "improperly installed insulation in the attic," "failed [t]o replace the insulation and sheetrock they removed on the second floor," "replaced hot water heater installed by K&T [and] failed to meet the

9

various code requirements," "installed flooring in the utility room and then ripped it when installing the washer," plus other allegations, totaling eight defects. CP at 8. He did not claim to have personal knowledge of what Crown Mobile did on the project.

Mr. Hamilton's declarations provided the same information for Crown Mobile as for K&T Construction. Mr. Hamilton's declarations did not document specific defects or identify work attributed to an individual defendant. However, Crown Mobile presented an additional letter from Mr. Hamilton filed early in the litigation. In this letter, Mr. Hamilton stated that he could not say who did which incorrect work.

Based on the evidence presented on each motion, the trial court granted both K&T Construction's and Crown Mobile's motions for summary judgment. The trial court considered the declarations from Mr. McClure and Mr. Hamilton, but concluded that these declarations relied on impermissible hearsay from Ms. Firey as to what work was done by whom and whether proper construction techniques were used. The trial court reasoned that Ms. Firey was not qualified to determine whether the work that was destroyed was defective, so the experts could not rely on Ms. Firey's statements to form a conclusion. In granting summary judgment, the court concluded that there was no admissible evidence as to the work the first and second contractors performed and whether it was defective because the actual evidence was either destroyed by subsequent contractors or was not preserved. The court also concluded that Ms. Firey could not bring a claim for unjust enrichment.

10

Ms. Firey appeals. She contends that the trial court erred in granting summary judgment because a genuine issue of material fact remains as to whether K&T Construction and Crown Mobile breached their contracts to repair her home. She also contends that the trial court prematurely dismissed her unjust enrichment claim.

ANALYSIS

1.    *Whether Ms. Firey presented material facts sufficient to withstand summary judgment against the first and second contractors*

Summary judgment orders are reviewed de novo on appeal. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). When reviewing a summary judgment order, the appellate court engages in the same inquiry as the trial court. Summary judgment is proper only if the pleadings, depositions, answers, and admissions, together with the affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The court must consider the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and the motion should be granted only if reasonable persons could reach but one conclusion from all the evidence. *Bozung v. Condo. Builders, Inc.*, 42 Wn. App. 442, 445, 711 P.2d 1090 (1985). Once the moving party has met its burden of presenting factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to set forth specific facts showing that a genuine issue exists for trial. *Graves v. P.J. Taggares Co.*, 94 Wn.2d

298, 302, 616 P.2d 1223 (1980) (quoting *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975)).

"A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The facts presented must be more than speculative and argumentative assertions. *Adams v. King County*, 164 Wn.2d 640, 647, 192 P.3d 891 (2008). A party may not rely on allegations, denials, opinions, or conclusory statements, but must set forth specific material facts for trial. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e). While the party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact, once he has so done, the other party cannot rely on pleadings that are unsupported by evidentiary facts. *State v. Yard Birds, Inc.*, 9 Wn. App. 514, 520, 513 P.2d 1030 (1973) (quoting *Tait v. KING Broad. Co.*, 1 Wn. App. 250, 255, 460 P.2d 307 (1969)).

Ms. Firey contends that the trial court erred in granting summary judgment to K&T Construction and Crown Mobile because a genuine issue of material fact remained on the breach and damages elements of her breach of contract claims. Ms. Firey

maintains that the declarations of Mr. McClure and Mr. Hamilton provide a basis to conclude that the work of K&T Construction and Crown Mobile was defective. Ms. Firey also maintains that the trial court erred by disregarding these declarations when Mr. McClure and Mr. Hamilton had a factual basis for their opinions.

To prevail on a breach of contract claim, a plaintiff must establish (1) the existence of a contractual duty, (2) defendant's breach of that duty, and (3) the defendant's breach of that duty caused damages to the plaintiff whom the duty is owed. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

Here, Ms. Firey argues that both defendants breached their contractual duties by not performing the work in "a workmanlike and professional manner." CP at 302. She asserts that they each promised her that they would perform work at this standard. She also asserts numerous aspects of K&T Construction's work which were deficient. She does not state that any of Crown Mobile's work was deficient. Rather, she simply states: "After working for a short period of time, [Crown Mobile] informed me that [its] schedule was too busy, and [it] could no longer dedicate time on my project. At the insistence of [Crown Mobile], Orozco Construction took over the scope of work." CP at 303.

It is well settled that a party resisting summary judgment cannot create a genuine issue of material fact by contradicting clear deposition answers. *In re Kelly*, 170 Wn.

App. 722, 738, 287 P.3d 12 (2012). Here, Ms. Firey's claim that K&T promised to perform its work in a "workmanlike and professional manner" contradicts her clear deposition answers where she described her agreement with K&T Construction as time and materials and to make the house livable for $25,000; she denied any further material terms.

As for her claim that K&T Construction's work was deficient, Ms. Firey provides no foundational basis for which to offer such an opinion. ER 703. The trial court properly ruled that Ms. Firey lacked the proper foundation to provide such technical opinions.

We now turn to the declarations of Ms. Firey's two experts, Mr. Hamilton and Mr. McClure. "In general, an affidavit containing admissible expert opinion on an ultimate issue of fact is sufficient to create a genuine issue as to that fact, precluding summary judgment." *J.N. v. Bellingham Sch. Dist. No. 501*, 74 Wn. App. 49, 60-61, 871 P.2d 1106 (1994). However, an expert opinion that is only a conclusion or that is based on assumptions does not satisfy the summary judgment standard. *John Doe v. Puget Sound Blood Ctr.*, 117 Wn.2d 772, 787, 819 P.2d 370 (1991). "Expert opinions must be based on the facts of the case and will be disregarded entirely where the factual basis for the opinion is found to be inadequate." *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 49 Wn. App. 130, 135, 741 P.2d 584 (1987), *aff'd*, 110 Wn.2d 912, 757 P.2d 507 (1988).

"In the context of a summary judgment motion, an expert must back up his or her opinion with specific facts." *Id.*

A qualified expert can testify to his or her opinion if the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue. ER 702. "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." ER 703.

While under ER 703, an expert can rely on inadmissible facts for the limited purpose of explaining the basis for an opinion, those facts cannot be considered as substantive evidence. *See Allen v. Asbestos Corp.*, 138 Wn. App. 564, 581, 157 P.3d 406 (2007). "'[I]f an expert states the ground upon which his opinion is based, his explanation is not proof of the facts which he says he took into consideration. His explanation merely discloses the basis of his opinion in substantially the same manner as if he had answered a hypothetical question.'" *Allen*, 138 Wn. App. at 579-80 (alteration in original) (citation and internal quotation marks omitted) (quoting *Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 399-400, 722 P.2d 787 (1986)).

In *Miller v. Likins*, 109 Wn. App. 140, 149, 34 P.3d 835 (2001), an accident reconstructionist offered an opinion that Patricia Miller's minor son was on the shoulder of the road when he was struck by Ralph Likins's car. The expert admitted that there was no physical evidence to establish the location of the victim when the impact occurred and that he did not perform a quantitative analysis to support his version of the facts of the accident. *Id.* In affirming the trial court's summary judgment dismissal, the *Miller* court agreed with the trial court that the expert's opinion was speculative and lacked an adequate factual basis. *Id.*[2]

Here, the trial court considered the experts' declarations, but determined that the facts underlying the opinions were too speculative and therefore the opinions were insufficient to create a genuine issue of material fact. We agree. There is a central deficiency in these experts' declarations: It is obvious that both experts rely on the undocumented recollections of Ms. Firey as to the scope of work performed by each defendant and the resulting condition of the house after each defendant ceased its work. Neither expert saw the house immediately after Ms. Firey fired K&T Construction or after Crown Mobile ceased working. The pictures supposedly supporting their opinions are undated. The inadequacies of the two experts' factual foundations are further

---

[2] The *Miller* court also held that its review of the trial court's evidentiary ruling was an abuse of discretion. To this extent, we disagree with *Miller*. The proper standard of review of summary judgment evidentiary rulings is de novo. *See Keck v. Collins*, 181 Wn. App. 67, 80, 325 P.3d 306, *review granted*, 181 Wn.2d 1007, 335 P.3d 941 (2014).

heightened by the undisputed fact that the two experts did not make any personal observations concerning either defendant's work until after several other contractors performed work, resulting in the likely alteration of K&T Construction's and Crown Mobile's work. Similar to *Miller*, we hold that the trial court properly determined that the experts' opinions were speculative because they lacked an adequate factual foundation and were, therefore, insufficient to create a genuine issue of material fact.

2.      *Whether the trial court erred in dismissing Ms. Firey's claim for unjust enrichment*

Ms. Firey contends that the trial court erred in dismissing her unjust enrichment claim. While she admits that the claim is not available to parties who enter into a contract, she contends that whether a contract existed is yet to be determined. Thus, she maintains that it was premature for the court to dismiss her alternative claim of unjust enrichment.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008). Where a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply. *See Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F. Supp. 3d 1283, 1295-96 (E.D. Wash. 2014).

17

Here, all parties agree that Ms. Firey entered into a time and materials contract with both K&T Construction and Crown Mobile. No genuine issue of material fact remains. Consequently, Ms. Firey has an adequate legal remedy for breach of contract. The fact that she cannot prove her breach of contract claim does not permit her to raise unjust enrichment.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____    _____
Brown, A.C.J.    Korsmo, J.