IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ZAK SMITH, | No. 82672-7 |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| GEN CON LLC, a Washington State Limited Liability Company; PETER ADKISON, an individual; and PETER ADKISON AND JANE DOE ADKISON and the marital community composed thereof, | |
| Respondents. | |

SMITH, A.C.J. — Gen Con LLC, a prominent gaming convention, and Peter Adkison, its co-owner, issued statements about their decision to ban Zak Smith from the convention after Smith was accused of sexual assault by his ex-wife. Smith sued Gen Con and Adkison for defamation, false light, outrage, intentional interference with a business expectation, and violations of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW. The court dismissed his complaint in its entirety, with prejudice, for failure to state a claim under CR 12(b)(6), and denied Smith's motion for reconsideration. Because Smith's complaint contained sufficient allegations to put Gen Con and Adkison on notice with respect to his defamation, false light, and intentional interference claims, we reverse the dismissal of these causes of actions. But because Smith's complaint does not provide a basis to recover for outrage or for a CPA violation, we affirm

the dismissal of those claims.

FACTS

Zak Smith is an artist who began developing tabletop role-playing games ("RPGs") in 2010.[1]  Smith was successful in the RPG world, winning prestigious awards, successfully developing and selling his own games, and consulting on prominent RPGs such as Dungeons & Dragons.  Smith generated a substantial portion of his income from RPG development and consulting.

Gen Con is "the largest and longest-running tabletop gaming convention in North America," annually hosting about "70,000 RPG developers, producers, manufacturers, consultants, and fans [who] unveil their new releases, gain recognition and publicity in the RPG industry, and engage in activities to promote themselves, their games, and their businesses."  "For consultants, developers, and producers of [RPGs] to succeed in that industry, they must attend Gen Con."  Peter Adkison is the co-owner and board chairman of Gen Con.  Smith attended Gen Con for many years and "generated a significant amount of his professional and business relations, consulting jobs, sales, and other business interest in the RPG industry from the event."

In February 2019, Smith's estranged wife published a Facebook post accusing Smith of sexual assault during their marriage.  Smith alleges, and we must assume for purposes of this appeal, that these accusations are false.

_____

[1] The facts in this section are taken from the allegations in Smith's complaint.  "When reviewing the denial of a CR 12(b)(6) motion, we presume that the complaint's factual allegations are true."  Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 827 n.1, 355 P.3d 1100 (2015).

Shortly after Smith's wife made the Facebook post, Adkison published a statement on Gen Con's website:

> At Gen Con we have a policy of not disclosing the names of individuals who have been sanctioned or banned from our events. However, our statements regarding a recent ban have caused confusion and more importantly, made people feel that Gen Con doesn't care about attendee safety. To clarify, I want to state that Zak S has been banned from Gen Con and that we flat-out don't tolerate harassers or abusers in our community or at our convention.

Adkison published a post linking to the statement on his personal Facebook page, saying, "In response to the recent outcry against Zak Smith, I've posted an open letter on the Gen Con website uninviting him to Gen Con." In response to a comment on that post characterizing Gen Con's statement as lacking due process, Adkison stated: "There was due process, that's why it took us so long to come around. There were many people abused by Zak, the evidence was overwhelming. I don't need a court process to uninvite [an] abuser to my party." Gen Con also linked to the statement on its Twitter account in a tweet saying, "Last week, we made a statement regarding our stance on abuse & harassment in gaming.[2] Many of you told us it wasn't clear enough & we need to take a firmer stand. We heard you & want to be clear: Zak S is banned from attending."

In the wake of these statements, the news that Smith was banned was reported in a major gaming news outlet, Smith lost his main game publisher, a game he was working on was suspended, vendors and most relevant game

---

[2] This is apparently in reference to an earlier statement that Gen Con made in response to the accusations against Smith, which did not name Smith or specify that he was banned.

forums banned Smith, and Smith's Wikipedia page was edited to reflect the news. Smith lost substantial income, suffered damage to his reputation, and suffered emotional distress.

PROCEDURAL BACKGROUND

On February 8, 2021, Smith sued Gen Con and Adkison for defamation, defamation per se, false light, outrage, interference with a business expectancy, and violation of the CPA.

On March 17, Gen Con and Adkison moved to dismiss Smith's complaint for failure to state a claim under CR 12(b)(6). The court granted the motion and dismissed Smith's complaint with prejudice.

Smith moved for reconsideration, asking for leave to file an amended complaint. He attached a proposed amended complaint containing additional facts and exhibits and only requesting relief for defamation, defamation per se, and false light. The court denied the motion.

Smith appeals.

ANALYSIS

Smith contends that the trial court erred by dismissing his complaint with prejudice. He also requests costs on appeal. Gen Con and Adkison dispute these claims and request that we affirm the court's dismissal of Adkison's wife as a party.

CR 12(b)(6) Dismissal

"Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought." Pac. Nw. Shooting Park

Ass'n v. City of Sequim, 158 Wn.2d 342, 352, 144 P.3d 276 (2006). We review orders on CR 12(b)(6) motions de novo. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015). "All facts alleged in the complaint are taken as true, and we may consider hypothetical facts supporting the plaintiff's claim." FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). "Dismissal based on failure to state a claim is appropriate only if we conclude, beyond a reasonable doubt, that the plaintiff cannot prove any set of facts consistent with the complaint which would justify recovery." Byrd v. Pierce County, 5 Wn. App. 2d 249, 256-57, 425 P.3d 948 (2018). Accordingly, a CR 12(b)(6) motion should be granted " 'sparingly and with care' and, as a practical matter, 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

Generally, on a CR 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." CR 12(b)(7). Nonetheless, " '[d]ocuments whose contents are alleged in a complaint but which are not physically attached to the pleading may . . . be considered in ruling on a CR 12(b)(6) motion to dismiss.' " Trujillo, 183 Wn.2d at 827 n.2 (quoting Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 726, 189 P.3d 168 (2008)). Here, the only outside materials that were considered were alleged in the complaint, so this appeal is appropriately treated as a CR 12(b)(6) dismissal.

1. Defamation

In a defamation case, a plaintiff must establish that the defendant made false statements, that the statements were unprivileged, that the defendant was at fault, and that the statements proximately caused damages. Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005); Life Designs Ranch, Inc. v. Sommer, 191 Wn. App. 320, 330, 364 P.3d 129 (2015). The level of fault that must be proved in defamation cases depends on the plaintiff's status as a public or private individual. "If the plaintiff is a public figure or public official, he must show actual malice. If, on the other hand, the plaintiff is a private figure, he need show only negligence." LaMon v. Butler, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989). "A defendant acts with malice when he knows the statement is false or recklessly disregards its probable falsity." Tan v. Le, 177 Wn.2d 649, 669, 300 P.3d 356 (2013).

Here, Gen Con and Adkison claimed, and the court determined, that Smith failed to adequately plead fault and causation. But Smith's complaint alleged that Gen Con and Adkison "knew that [the web post, tweet, and Facebook reply were] false, reasonably should have known they were false, and acted maliciously and . . . with the intent, or with despicable conduct, to harm" Smith. This sufficiently alleged that Gen Con and Adkison were at fault, even if Smith is considered a public figure. "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." CR 9(b). While Smith may not have alleged specific facts *proving* that Gen Con and Adkison knew or should have known that the statements were false, that is not the issue at the

CR 12(b)(6) stage.

Furthermore, Smith adequately alleged causation. Smith alleged that Gen Con is an important and influential part of the RPG community: that it is " 'the largest and longest-running tabletop gaming convention in North America,' " that an average of 70,000 people attend, and that "[f]or consultants, developers, and producers of [RPGs] to succeed in that industry, they must attend Gen Con." Smith alleged that after Gen Con and Adkison made their statements, their statements were reported in at least one news outlet, publishers and vendors stopped working with Smith, Smith was banned from most relevant game forums, and Smith suffered substantial damage to his reputation and loss of income. It also alleged that these outcomes were direct and proximate results of the defendants' statements. This was sufficient to allege causation. To survive a CR 12(b)(6) motion, Smith was not required to provide evidence showing how the statements caused the specific damages. His complaint only had to include " 'direct allegations on every material point necessary to sustain a recovery . . . *or* contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' " Havsy v. Flynn, 88 Wn. App. 514, 518, 945 P.2d 221 (1997) (emphasis added) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 156-59 (2d ed. 1990)). Smith's statements that Adkison and Gen Con exercised a strong influence in the gaming world and that their statements caused his enumerated damages were more than sufficient to allege causation.

Gen Con disagrees and contends that Smith's causation claim relies only

on a coincidence in timing, and not on any showing of cause and effect. But while Gen Con is correct that showing one event preceded another is not necessarily sufficient to prove causation, Life Designs Ranch, 191 Wn. App. at 334-35, Smith was not required to *prove* causation in his complaint. Instead, at this stage of the proceeding, he only had to "give the opposing party fair notice of what the claim is and the ground upon which it rests." Lewis v. Bell, 45 Wn. App. 192, 197, 724 P.2d 425 (1986). Smith's complaint gives fair notice of his theory that Gen Con and Adkison's decision to make their public statements influenced other members of the RPG community to take similar actions against Smith, causing harm to his reputation and livelihood.

Gen Con also contends that courts' role in the early resolution of defamation cases is essential to protect the First Amendment[3] rights of freedom of speech and freedom of association. But it cites Mark v. Seattle Times, 96 Wn.2d 473, 484-85, 635 P.2d 1081 (1981), concerning *summary judgment* dismissal of defamation cases. In that case, our Supreme Court noted the importance of summary judgment as a procedural mechanism to avoid harassing lawsuits that inhibit free speech. Id. It noted that "[s]erious problems regarding the exercise of free speech and free press guaranteed by the First Amendment are raised if unwarranted lawsuits are allowed to proceed to trial." Id. at 485 (quoting Tait v. KING Broadcasting Co., 1 Wn. App. 250, 255, 460 P.2d 307 (1969)). But while these First Amendment concerns are important, they do not justify dismissal at the CR 12(b)(6) stage where the plaintiff has complied with

---

[3] U.S. CONST. amend. I.

Washington's notice pleading standards.

Because it does not "appear[ ] beyond doubt" that Smith cannot prove "any set of facts" that would warrant relief under his complaint, we conclude that the court erred by dismissing his claim for defamation. Havsy, 88 Wn. App. at 518.

### 2. Defamation Per Se

A statement is defamatory per se if it "(1) exposes a living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 100 Wn.2d 343, 353, 670 P.2d 240 (1983). "The imputation of a criminal offense involving moral turpitude has been held to be clearly libelous per se." Id. Spousal abuse is a crime involving moral turpitude. State v. Manajares, 197 Wn. App. 798, 815, 391 P.3d 530 (2017). If a statement "deals with the rather vague areas of public confidence, injury to business, etc.," then whether it is defamation per se should likely be a question of fact for the jury. Caruso, 100 Wn.2d at 353-54.

We conclude that the court erred by dismissing Smith's defamation per se claim. The court concluded that the statements at issue were not "extreme" or "severe" enough to constitute defamation per se and that Smith failed to adequately allege causation. But the statements may have injured Smith in his business and may have imputed a crime involving moral turpitude to him. The court therefore erred by determining as a matter of law that the statements were

not defamatory per se.  See Caruso, 100 Wn.2d at 354 ("In all but extreme cases the jury should determine whether the article was libelous per se.").  Moreover, the court erred by finding that Smith failed to allege the statements caused damage, because if a statement is defamatory per se, "damages need not be proved."  Maison de France, Ltd. v. Mais Oui!, Inc., 126 Wn. App. 34, 44, 108 P.3d 787 (2005).  The court erred by dismissing Smith's defamation per se claim.

### 3.  False Light

" 'The protectable interest in privacy is generally held to involve four distinct types of invasion: intrusion, disclosure, false light and appropriation.' " Life Designs Ranch, 191 Wn. App. at 339 (quoting Eastwood v. Cascade Broad. Co., 106 Wn.2d 466, 469, 722 P.2d 1295 (1986)).  "False light claims differ from defamation claims because false light claims focus on compensation for mental suffering rather than reputation."  Life Designs Ranch, 191 Wn. App. at 339.  "A false light claim arises when someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed."  Eastwood, 106 Wn.2d at 470-71.

Here, the court dismissed the claim on the grounds that Smith had failed to allege that the defendants "knew or recklessly disregarded falsity" and that he had failed to allege causation.  But Smith's false light claim relied on the same facts as his defamation claim, and as described above, Smith sufficiently pleaded that the defendants knew their statements were false.  And Smith adequately

pleaded that the statements caused damages including mental suffering, by alleging that as a result of the statements, he "has suffered, and will suffer, emotional distress, and continue to be embarrassed and humiliated." We therefore conclude that the court erred by dismissing Smith's false light claim.

### 4. Outrage

To prevail on a claim for outrage—also referred to as intentional infliction of emotional distress—"the plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress." Spicer v. Patnode, 9 Wn. App. 2d 283, 292, 443 P.3d 801 (2019). "[I]t is not enough that a 'defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. (1965)). Rather, "the conduct at issue 'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Spicer, 9 Wn. App. 2d at 292 (internal quotation marks omitted) (quoting Reyes v. Yakima Health Dist., 191 Wn.2d 79, 91, 419 P.3d 819 (2018)). The question of whether conduct is sufficiently extreme and outrageous to impose liability is a question for the jury unless the court determines that reasonable minds could not differ on whether the conduct was sufficiently extreme. Spicer, 9 Wn. App. 2d at 292-93.

Here, the court determined that Gen Con and Adkison's statements were not extreme or outrageous conduct. We agree. <u>Salvidar v. Momah</u> is instructive. 145 Wn. App. 365, 186 P.3d 1117 (2008). There, a patient sued a physician, claiming that he had sexually abused her. <u>Id.</u> at 372-73. The trial court found that the patient's testimony was not credible, dismissed her claims, and found in favor of the doctor on his outrage claim. <u>Id.</u> at 383-84. On appeal, the court of appeals held that "[f]iling suit alleging sexual abuse by a physician, even with malicious intent," did not constitute extreme or outrageous conduct. <u>Id.</u> at 390. Similarly, making a public statement that Smith was an abuser does not reach the "high standard of outrageousness" necessary to establish a claim for intentional infliction of emotional distress. <u>Spicer</u>, 9 Wn. App. 2d at 293. The cases where outrage has been permitted include much more extreme and intolerable facts. <u>See</u> <u>Grimsby</u>, 85 Wn.2d at 60 (plaintiff adequately pleaded outrage where he had to " 'witness the terrifying agony and explicit pain and suffering of his wife while she [p]roceeded to die right in front of his eyes' " as a result of doctor's failure to provide medical care); <u>Spicer</u>, 9 Wn. App. 2d at 289, 293 (permitting trier of fact to consider outrage claim where neighbor persistently harassed plaintiff over the course of several months to get her to stop teaching piano lessons at her house by remotely setting off an alarm whenever students walked to or from lessons). The court did not err by dismissing Smith's outrage claim for isolated statements about Gen Con's decision to ban Smith from the convention.

5.  Intentional Interference with a Business Expectancy

To establish a claim for tortious interference with a business expectancy, "a plaintiff must show '(1) the existence of a . . . [valid] business expectancy; (2) that [the defendant] had knowledge of that [expectancy]; (3) an intentional interference inducing or causing . . . termination of the . . . expectancy; (4) that [the defendant] interfered for an improper purpose or used improper means; and (5) resultant damage." Greensun Grp., LLC v. City of Bellevue, 7 Wn. App. 2d 754, 768, 436 P.3d 397 (2019) (alterations in original) (quoting Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006)).  Here, the court held that Smith failed to plead any of the five elements. We disagree.

First, Smith adequately pleaded that he had a valid business expectancy. "A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value." Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 158, 52 P.3d 30 (2002). Smith alleged that RPG developers "unveil their new releases, gain recognition and publicity . . . , and engage in activities to promote themselves, their games, and their businesses" at Gen Con, that RPG developers "must attend Gen Con" to succeed in their industry, and that Smith had in the past "generated a significant amount of his professional and business relations, consulting jobs, sales, and other business interests in the RPG industry" from Gen Con.  He also alleged that he had "a prospective contractual or business relationship with pecuniary value with customers who attend Gen Con."  Because business

expectancies include prospective business relationships, Smith's allegations are sufficient to plead a valid business expectancy.

Next, Smith adequately alleged that Gen Con and Adkison both knew about Smith's business expectancies and intentionally interfered with them. "Interference with a business expectancy is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.' " Id. (quoting RESTATEMENT § 766B, cmt. d). Smith's complaint alleged that Gen Con "knew about those ongoing relationships, both existing and prospective," and that their false publications were "intended to be an intentional interference . . . causing a . . . termination of the business relationship or expectancy." In his opposition to the motion to dismiss, Smith more specifically alleged that Gen Con and Adkison knew that "Gen Con was a crucial part of [Smith's] financial success . . . . since Gen Con had not only sold [Smith] tickets, but Adkison had seen [Smith] win many awards during Gen Con, arranged to meet with him during the convention, and they attended at least one convention party together." See Halvorson v. Dahl, 89 Wn.2d 673, 675, 574 P.2d 1190 (1978) ("Because the legal standard is whether any state of facts supporting a valid claim can be conceived, there can be no prejudice or unfairness to a defendant if a court considers specific allegations of the plaintiff to aid in the evaluation of the legal sufficiency of plaintiff's claim."). These allegations are sufficient to give the defendants fair notice of Smith's claims that they knew about his business expectancies with respect to Gen Con and intentionally interfered with them, and the allegations on their face do not

show "some insuperable bar to relief." Kinney, 159 Wn.2d at 842.

Furthermore, Smith adequately alleged that Gen Con and Adkison interfered for an improper purpose or used improper means. "Interference is for an improper purpose if it is wrongful by some measure beyond the interference itself, such as a statute, regulation, recognized rule of common law, or an established standard of trade or profession." Newton, 114 Wn. App. at 158. Smith alleged that Gen Con and Adkison banned Smith publicly and in a defamatory manner. Because defamation is tortious, we conclude that Smith adequately pleaded this element.

Finally, as discussed above, Smith adequately pleaded causation. Therefore, the court erred by dismissing Smith's claim for tortious interference with a business expectancy.

### 6. Consumer Protection Act

The Consumer Protection Act forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To establish a private claim under the CPA, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in [their] business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The trial court held that Smith failed to allege an unfair or deceptive act, a public interest impact, and injury to his business or property. As discussed above, Smith adequately alleged a deceptive act because he alleged defamation and he

adequately alleged resulting injury to his business or property. The only remaining issue is whether Smith adequately pleaded a public interest impact. We conclude that he did not.

"[W]hether the public has an interest in any given action is to be determined by the trier of fact from several factors, depending upon the context in which the alleged acts were committed." Hangman Ridge, 105 Wn.2d at 789-90. If the transaction is a consumer transaction, the court looks to the following factors:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

Id. at 790. "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Id. "However, it is the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion that changes a factual pattern from a private dispute to one that affects the public interest." Id. In a private dispute, the court considers similar factors: "(1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?" Id. at 790-91. "The factors in both the 'consumer' and 'private dispute' contexts represent indicia of an effect on public interest from which a

trier of fact could reasonably find public interest impact." Id. at 791.

The facts in this case do not implicate the concerns that the CPA is meant to address. Even if Gen Con and Adkison's statements in barring Smith from returning were deceptive and unfair and occurred in trade or commerce, as we must assume they were, Smith's complaint specifically indicates that they are not part of a pattern of conduct. Per the complaint, Gen Con normally does not disclose the names of banned individuals and apparently only did so here in response to a public outcry and concerns about attendee safety. The risk of Gen Con or Adkison banning other game creators in a defamatory manner appears slim, and the public interest impact of the statements is marginal. The statements primarily affected Smith, and any alleged impact on Smith's fans or collectors of his art is too attenuated to justify recovery under the CPA.[4] Accordingly, we conclude that the court did not err by dismissing Smith's CPA claim.

The court erred by dismissing Smith's claims for defamation (including defamation per se), false light, and intentional interference with a business expectancy. These causes of action should be reinstated on remand.[5]

---

[4] See Smith v. Markgraf, No. 78948-1-I, slip op. at 9 (Wash. Ct. App. Dec. 9, 2019) (unpublished) https://www.courts.wa.gov/opinions/pdf/789481.pdf (cleaning service customer's act of posting a potentially defamatory Yelp review did not affect the public interest and fell "well outside of the intended scope of the statute"); GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

[5] Smith also contends that the court abused its discretion by denying his request for leave to amend his complaint. Smith's proposed amended complaint pleaded only defamation, defamation per se, and false light. Because we reverse the court's dismissal of those claims, we need not reach this issue.

### Dismissal of Adkison's Wife

Smith's complaint named Gen Con, Peter Adkison as an individual, and "Peter Adkison and Jane Doe Adkison and the marital community composed thereof" as defendants. On appeal, Gen Con and Adkison request that we affirm the dismissal of Adkison's wife because there are no allegations in the complaint that reference her. But they fail to cite to any authority supporting their request. Given that a marital community may be liable for the intentional tort of one of its members, we deny this request. Clayton v. Wilson, 168 Wn.2d 57, 63, 227 P.3d 278 (2010).

### Costs

Smith requests costs on appeal. As the substantially prevailing party, he may file a cost bill pursuant to RAP 14.4.

We reverse in part and remand.

_Smith, A.C.J._

WE CONCUR: